Filed: June 6, 2011

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-7611(L)**
5:06-hc-02219-BO

_____

UNITED STATES OF AMERICA,

        Petitioner – Appellant,

    v.

DONALD BRONCHEAU,

        Respondent – Appellee.

_____

**No. 10-7616**
5:07-hc-02101-BO

_____

UNITED STATES OF AMERICA,

        Petitioner – Appellant,

    v.

JEFFREY NEUHAUSER,

        Respondent – Appellee.

_____

**No. 10-7617**
5:07-hc-02148-BO

_____

UNITED STATES OF AMERICA,

        Petitioner – Appellant,

    v.

JERRY T. ROGERS,

Respondent – Appellee.

_____

**No. 10-7618**
5:07-hc-02166-BO

_____

UNITED STATES OF AMERICA,

Petitioner – Appellant,

v.

DAVID HENRY TOBEY,

Respondent – Appellee.

_____

**No. 10-7619**
5:07-hc-02025-BO

_____

UNITED STATES OF AMERICA,

Petitioner – Appellant,

v.

SCOTT KEVIN COMBE,

Respondent – Appellee.

_____

**No. 10-7620**
5:07-hc-02185-BO

_____

UNITED STATES OF AMERICA,

Petitioner – Appellant,

v.

MATHIAS THOMAS KOPP,

                          Respondent – Appellee.

                              ─────────────────

                                 **No. 10-7621**
                              5:07-hc-02206-BO

                              ─────────────────

UNITED STATES OF AMERICA,

                          Petitioner – Appellant,

          v.

EDWARD DAVID ERWIN,

                          Respondent – Appellee.

                              ─────────────────

                                 **No. 10-7622**
                              5:08-hc-02037-BO

                              ─────────────────

UNITED STATES OF AMERICA,

                          Petitioner – Appellant,

          v.

PATRICK CAPORALE,

                          Respondent – Appellee.

                              ─────────────────

                                 **No. 10-7623**
                              5:07-hc-02063-BO

                              ─────────────────

UNITED STATES OF AMERICA,

                          Petitioner – Appellant,

          v.

3

KEVIN MCGREEVY,

                Respondent – Appellee.

--------------------

O R D E R

--------------------

The Court amends its opinion filed May 26, 2011, as follows:

On page 19, first paragraph of the concurring opinion, line 5 -- the word "in" is inserted after the words "who is."

                For the Court – By Direction

                /s/ Patricia S. Connor
                          Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

DONALD BRONCHEAU,

*Respondent-Appellee.*

No. 10-7611

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

JEFFREY NEUHAUSER,

*Respondent-Appellee.*

No. 10-7616

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

JERRY T. ROGERS,

*Respondent-Appellee.*

No. 10-7617

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

DAVID HENRY TOBEY,

*Respondent-Appellee.*

No. 10-7618

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

SCOTT KEVIN COMBE,

*Respondent-Appellee.*

No. 10-7619

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

MATHIAS THOMAS KOPP,

*Respondent-Appellee.*

No. 10-7620

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

EDWARD DAVID ERWIN,

*Respondent-Appellee.*

No. 10-7621

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

PATRICK CAPORALE,

*Respondent-Appellee.*

No. 10-7622

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

KEVIN MCGREEVY,

*Respondent-Appellee.*

No. 10-7623

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(5:06-hc-02219-BO; 5:07-hc-02101-BO; 5:07-hc-02148-BO;
5:07-hc-02166-BO; 5:07-hc-02025-BO; 5:07-hc-02185-BO;
5:07-hc-02206-BO; 5:08-hc-02037-BO; 5:07-hc-02063-BO)

Argued: March 22, 2011

Decided: May 26, 2011

Before KING, GREGORY, and WYNN, Circuit Judges.

Vacated and remanded by published opinion. Judge King
wrote the opinion, in which Judge Gregory and Judge Wynn
joined. Judge Wynn wrote a separate concurring opinion.

**COUNSEL**

**ARGUED**: Samantha Lee Chaifetz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. G. Alan DuBois, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Tony West, Assistant Attorney General, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; George E. B. Holding, United States Attorney, R. A. Renfer, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Samuel A. Forehand, SAMUEL A. FOREHAND, P.A., Raleigh, North Carolina, for Appellee Rogers; Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for all other Appellees.

---

**OPINION**

KING, Circuit Judge:

In these consolidated appeals, we are called upon to resolve issues concerning the Adam Walsh Child Protection and Safety Act of 2006, specifically the civil commitment provisions codified at 18 U.S.C. § 4248. Invoking those provisions, the government initiated proceedings in the Eastern District of North Carolina seeking the civil commitment of the Respondents-Appellees — all prisoners in the custody of the Bureau of Prisons (the "BOP") — because the government has certified them as "sexually dangerous person[s]." After delays precipitated by related litigation challenging the constitutionality of § 4248, the district court collectively dismissed all nine proceedings. *See United States v. Broncheau*, No. 06-HC-2219 (L), (E.D.N.C. Oct. 29, 2010) (the "Dismissal Order").[1] The Dismissal Order reasoned that the proceedings

---

[1]The Dismissal Order has been designated for publication, but has not yet appeared in the Federal Supplement. We cite to the slip opinion of the district court, which may be found at 2010 WL 4484635.

had not been properly instituted because, with respect to prisoners whose sentences include a term of supervised release, § 4241 of Title 18, rather than § 4248, is "the proper way to initiate [civil commitment] proceedings under the Adam Walsh Act." *Id.* at 15. The government has appealed, and, as explained below, we vacate the Dismissal Order and remand.

## I.

We begin by identifying the applicable statutory provisions and briefly explaining the constitutional challenges to 18 U.S.C. § 4248 that have been heretofore resolved. We then set forth the relevant background of these proceedings.

## A.

By the enactment of § 4248, Congress addressed the dangers associated with the release from custody of persons who, because of mental illness, are likely to have difficulty refraining from violent or dangerous sexual conduct. Section 4248 established a statutory mechanism whereby the United States may seek the civil commitment of a "sexually dangerous person" who is in federal custody, even when doing so detains the prisoner beyond the expiration of his sentence of imprisonment. *See United States v. Comstock*, 130 S. Ct. 1949, 1961 (2010). A "sexually dangerous person" is defined as "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). In turn, a person is "sexually dangerous to others" if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." § 4247(a)(6).

In order to institute a § 4248 civil commitment proceeding, an authorized official must first certify that the prospective respondent is a "sexually dangerous person." 18 U.S.C.

§ 4248(a).[2] On the basis thereof, the government initiates a § 4248 commitment proceeding by filing the certification in the district court where the respondent is confined. *See id.* Three categories of sexually dangerous persons are eligible to be so certified: (1) persons "in the custody of the Bureau of Prisons"; (2) persons "committed to the custody of the Attorney General pursuant to section 4241(d)" on the basis of mental incompetency; and (3) persons "against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person." *Id.* These nine Respondents were each eligible for certification under the first of these three categories, that is, they were (and remain) in the custody of the BOP.

When a § 4248 certification is filed in the district court, the respondent's release from custody is immediately stayed pending completion of the prescribed procedures. *See* § 4248(a). These procedures include, inter alia, a psychiatric or psychological examination of the respondent (if ordered by the district court pursuant to § 4248(b)), and a hearing conducted in accordance with 18 U.S.C. § 4247(d).[3] If, after the

---

[2]Section 4248(a) specifies the procedures by which the government may institute a civil commitment proceeding on the basis of sexual dangerousness. It provides, in pertinent part, that

> the Attorney General or any [authorized official] may certify that [an eligible] person is a sexually dangerous person, and transmit the certificate to the clerk of the court for the district in which the person is confined. . . . The court shall order a hearing to determine whether the person is a sexually dangerous person. A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

18 U.S.C. § 4248(a).

[3]The provisions of § 4247(d) of Title 18 apply to § 4248 proceedings. *See* § 4248(c). Section 4247(d) details the procedural requirements of a § 4248 hearing, specifying, in pertinent part, that

> [a]t a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented

hearing, the court finds by clear and convincing evidence that the respondent is a "sexually dangerous person," it must "commit the person to the custody of the Attorney General." § 4248(d). Such a respondent remains so committed until he is "no longer sexually dangerous to others." § 4248(d).[4]

B.

The § 4248 civil commitment process has faced several constitutional challenges since its enactment. *See, e.g.*, *United States v. Volungus*, 595 F.3d 1 (1st Cir. 2010); *United States v. Comstock*, 551 F.3d 274 (4th Cir. 2009) ("*Comstock I*"). In 2007, a district court in this Circuit struck down the commitment scheme of § 4248 on two constitutional grounds: that (1) Congress lacked the authority to enact § 4248; and (2) § 4248's clear and convincing burden of proof contravened the Due Process Clause of the Fifth Amendment. *See United States v. Comstock*, 507 F. Supp. 2d 522 (E.D.N.C. 2007). On appeal, we agreed with the district court that enactment of § 4248 exceeded congressional authority, without reaching the due process issue. *See Comstock I*, 551 F.3d at 276.

In May 2010, the Supreme Court reversed our *Comstock I* decision, holding that Article I of the Constitution conferred sufficient authority for Congress to enact § 4248. *See Comstock*, 130 S. Ct. at 1954 (recognizing that Constitution grants authority for Congress "to enact § 4248 as necessary and

---

by counsel and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him . . . . The person shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing.

18 U.S.C. § 4247(d).

[4]A respondent committed pursuant to § 4248 is entitled to seek from the court that ordered his commitment a "hearing to determine whether [he] should be discharged from the facility." *See* § 4247(h). Such relief cannot be first sought, however, until 180 days after the respondent was civilly committed. *See id.*

proper for carrying into Execution the powers vested by the Constitution" (internal quotation marks omitted)). The Court remanded for an assessment of the unresolved issue of whether § 4248's clear and convincing burden of proof abridged a certified respondent's Fifth Amendment due process rights. *See id.* at 1965. On December 6, 2010, we concluded that the burden of proof under § 4248 did not, on its face, offend the Fifth Amendment, and thus reversed the district court. *See United States v. Comstock*, 627 F.3d 513, 524-25 (4th Cir. 2010) ("*Comstock II*").

### C.

The relevant facts underlying these consolidated appeals are substantially similar. The nine Respondents are incarcerated at the Federal Correctional Institute at Butner, North Carolina ("FCI-Butner"), and they were — when their respective certifications were made — about to be released from BOP custody and begin serving previously imposed terms of supervised release.[5] Shortly before each Respondent was to be released, however, the government instituted a § 4248 civil commitment proceeding, filing a certification that the particular Respondent was in the custody of the BOP, a "sexually dangerous person," and "sexually dangerous to others." Pursuant to § 4248(a), the filing of these certifications stayed release of the Respondents.

Although the government has consistently acknowledged that the Respondents are entitled to hearings and rulings on the merits of their respective § 4248 certifications, no such hearings have been conducted and the § 4248 procedures have not been completed. By way of explanation, the § 4248 proceedings were initially stayed by the district court pending resolution of the constitutional issues presented in the *Com-*

---

[5]The Respondents' various terms of supervised release were scheduled to begin between January 4, 2007, and March 21, 2008, at the conclusion of their individual terms of imprisonment.

*stock* litigation. After the Supreme Court reversed *Comstock I*, however, the Chief Judge of the district court entered a standing order establishing, inter alia, procedures by which § 4248 respondents could request merits hearings on their certifications, rather than await judicial determination of pending constitutional issues in other litigation. *See* Standing Order, 10-SO-01 (E.D.N.C. Aug. 4, 2010).

By September 2010, each of the Respondents had filed a motion to dismiss his § 4248 commitment proceeding. These dismissal motions were predicated primarily on the constitutional contentions being pursued in the *Comstock* litigation.[6] On October 29, 2010, before *Comstock II* resolved the Fifth Amendment burden-of-proof issue in favor of the government, the district court entered its Dismissal Order.

It is undisputed that the Respondents were each in the custody of the BOP when they were certified, pursuant to § 4248(a)'s first category of eligible persons, as sexually dangerous, as well as when these commitment proceedings were instituted. Nonetheless, the district court dismissed the nine commitment proceedings, expressing its concern that continuing to hold the Respondents at FCI-Butner, rather than allowing their terms of supervised release to commence, implicated "various due process concerns." *See* Dismissal Order 15.[7]

---

[6]The Respondents' motions to dismiss in these cases made several arguments in addition to the constitutional contentions relied upon by the *Comstock* respondents. More specifically, the Respondents alleged that their terms of supervised release provided adequate safeguards to the public, that these § 4248 certifications were premature and unnecessary, and that the stigma of being labeled "a sexually dangerous person" is a lifelong burden.

[7]The Dismissal Order observed that at least one district court had concluded that § 4248 "fails to provide procedural and evidentiary protections sufficient to satisfy procedural due process, on its face and as applied." Dismissal Order 11 (citing *Timms v. Johns*, 700 F. Supp. 2d 764, 770-74 (E.D.N.C. 2010), *vacated*, 627 F.3d 525 (4th Cir. 2010)). The district court also stated its view that, by "staying the commencement of respondents' court-ordered terms of supervised release, the section 4248 certifications filed by the government have circumvented court-ordered criminal judgments across the country, judgments which only the courts of imposition have the power to modify." *Id.* at 16.

Although the Dismissal Order identified several potential constitutional deficiencies in the § 4248 commitment procedures, the court did not rule that § 4248 was unconstitutional, either facially or as applied. Instead, the court — relying on the principle that constitutional questions should be avoided when possible, plus the rule that statutes relating to the same subject matter should be read together, that is, *in pari materia* — decided that these proceedings had not been properly instituted. In particular, the court ruled that the government should have proceeded first under § 4241, rather than pursuant to § 4248, explaining that "when a respondent has not completed his sentence because he has a remaining term of supervised release, the use of section 4241 is the proper way to initiate [civil commitment] proceedings under the Adam Walsh Act." Dismissal Order 15.[8]

Under the approach espoused by the Dismissal Order, if the government believes that a soon-to-be-released federal prisoner is a sexually dangerous person and that a civil commitment under § 4248 is appropriate, it must first await the release of the prisoner from BOP custody and thereafter obtain a commitment order under § 4241. The government may then pursue a § 4248 commitment under the second category of the persons eligible for certification — that is, those "committed to the custody of the Attorney General pursuant to section 4241(d)." § 4248(a). The district court explained that requiring such commitment proceedings to be initiated under § 4241 alleviates the constitutional concerns presented by § 4248. Because the government did not institute these proceedings by first seeking a commitment order under § 4241, the court dismissed them and ordered the Respon-

---

[8]Section 4241 of Title 18 was first enacted in 1948 and authorizes the commitment of a criminal defendant who, as a result of a mental disease or defect, lacks the mental competency to stand trial or undergo post-release proceedings. *See* § 4241(a). Section 4241 thus provides a mechanism to secure a judicial determination of a criminal defendant's competency, thereby protecting the defendant's fair trial rights and the integrity of judicial proceedings.

dents released from custody within thirty days, by November 28, 2010.

The government promptly appealed the Dismissal Order, and, in connection therewith, sought from the district court a stay of the Respondents' releases from BOP custody pending appeal. The district court denied the government's stay request on November 22, 2010, after which the government moved this Court for issuance of an emergency stay. On November 26, 2010, we granted the government's stay request and expedited the briefing and oral argument schedule. The Respondents therefore remain in the custody of the BOP, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

This appeal presents issues of statutory construction, quintessential questions of law that we review de novo. *See United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003).

## III.

As explained herein, 18 U.S.C. § 4248 was enacted to protect the public from the dangers posed by releasing sexually dangerous persons from federal custody. *See United States v. Comstock*, 130 S. Ct. 1949, 1961 (2010). Although § 4248(a) spells out procedures for the government to follow in seeking the civil commitment of such a sexually dangerous person, the district court declined to give effect to those provisions. Instead, the court devised an alternative approach that requires the government to stand aside as a federal prisoner with an upcoming term of supervised release — whom the government believes to be sexually dangerous — is released from BOP custody. After the prisoner's release, the government may then seek his commitment on a ground unrelated to sexual dangerousness: that the former prisoner is "unable to understand the nature and consequences of the proceedings

against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Only then, after obtaining the former prisoner's commitment under § 4241, is the government entitled to file its § 4248 certification, seeking his civil commitment — under § 4248(a)'s second category of eligible persons — on the basis that he is also sexually dangerous.

When it crafted the foregoing procedure, the district court was unable to take account of the merits of the then-pending Fifth Amendment burden-of-proof challenge to § 4248 that was resolved by our decision in *Comstock II*. *See* 627 F.3d 513 (4th Cir. 2010). *Comstock II* was decided in early December 2010, scarcely more than a month after the Dismissal Order was entered. Contemporaneously with *Comstock II*, we decided its companion case of *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010). In *Timms*, we vacated another of the primary authorities on which the Dismissal Order relied in concluding that § 4248 presented serious due process concerns.

Our usual course whenever a fundamental change in the law negates the underpinnings of a district court's decision is to remand the matter for the court to reassess whether it may reinstate its judgment consistent with the evolving legal landscape. *See Adams v. Sch. Dist. No. 5*, 444 F.2d. 99, 100-01 (4th Cir. 1971) (en banc). Although we could simply vacate the Dismissal Order on the basis of *Comstock II* and *Timms* without further discussion, compelling interests of judicial economy warrant a more in-depth assessment of the procedures fashioned by the district court concerning the initiation of § 4248 civil commitment proceedings against sexually dangerous prisoners whose sentences include terms of supervised release. As explained below, the Dismissal Order's approach to § 4248 — requiring the government first to release the prisoner from BOP custody, then obtain a commitment order under § 4241, and then finally seek a separate civil commitment order under the second category of persons eligible for certification under § 4248(a) (those "committed to the custody of the Attorney General pursuant to § 4241(d)") — is flawed

for at least three other reasons: first, it departs from the plain meaning of § 4248(a); second, it erroneously reads § 4248 *in pari materia* with § 4241; and, third, it erroneously invokes the canon of constitutional avoidance. For those reasons, and because the district court did not have the timely benefit of the *Comstock II* and *Timms* decisions, vacating the Dismissal Order is necessarily the prudent course.

### A.

We first observe that § 4248 is unambiguous with respect to the initiation of civil commitment proceedings against sexually dangerous federal prisoners in BOP custody. And, where "the terms of a statute are unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." *Rubin v. United States*, 449 U.S. 424, 430 (1981) (internal quotation marks omitted). As the Supreme Court has explained, if a reviewing court determines that the "legislative purpose is expressed in plain and unambiguous language," the duty of the court is to "give [the statute] effect according to its terms." *United States v. Rutherford*, 442 U.S. 544, 552 (1979) (internal quotation marks omitted). We should also strive, of course, when interpreting a statute, to give effect to each word and provision thereof. *See Broughman v. Carver*, 624 F.3d 670, 677 (4th Cir. 2010).

Applying the foregoing principles, there is little or no room for competing views on how Congress intended § 4248 civil commitment proceedings to be initiated. As we have emphasized, § 4248 is explicit — an authorized official "may certify that [an eligible individual] is a sexually dangerous person, and transmit the certificate to the clerk for the court for the district in which the person is confined." § 4248(a). Section 4248 is also unambiguous with respect to those eligible for certification, and it identifies three categories of persons who may be certified as sexually dangerous — the first being prisoners "in the custody of the Bureau of Prisons." § 4248(a). Notably, there is no exception for prisoners (such as the

Respondents) whose sentences include terms of supervised release. For at least two reasons, we are convinced that a prisoner whose sentence includes a term of supervised release falls within the class of persons "in the custody of the [BOP]" and is thus subject to a § 4248 certification.

First, as a factual matter, a prisoner in BOP custody whose unexpired sentence includes a term of supervised release is no less in the custody of the BOP than another prisoner who does not face a term of supervised release. Second, in enacting § 4248, Congress did not neglect to assess how commitment proceedings are to be initiated against prisoners whose sentences include terms of supervised release. Manifestly, we are unable to presume that Congress was unaware of those offenses for which a term of supervised release is required. *See* 18 U.S.C. § 3583(a), (k); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 185 (1988) (explaining that courts generally presume that "Congress is knowledgeable about existing law pertinent to the legislation it enacts"). Nor can we conclude that Congress failed to take account of the fact that the Sentencing Guidelines contemplate that a term of supervised release "shall . . . follow imprisonment when a sentence of imprisonment of more than one year is imposed." USSG § 5D1.1(a). Indeed, the overwhelming majority of federal criminal judgments include terms of supervised release. *See* United States Sentencing Commission, *Federal Offenders Sentenced to Supervised Release* 49-50 (2010). As the Sentencing Commission recently explained, for those convicted of federal felony or serious misdemeanor offenses between 2005 and 2009, ninety-five percent faced sentences that included terms of supervised release. *See id.*

By treating a prisoner whose sentence includes a term of supervised release differently than one with no such sentence, the Dismissal Order creates a judicial exception to § 4248 for the bulk of the BOP's prisoners who are otherwise eligible for certification. A cardinal principle of statutory interpretation, however, is that "[e]xceptions to clearly delineated statutes

will be implied only where essential to prevent absurd results or consequences obviously at variance with the policy of the enactment as a whole." *Rutherford*, 442 U.S. at 552 (internal quotation marks omitted). The Dismissal Order's construction of § 4248 — excepting a sexually dangerous prisoner whose sentence includes a term of supervised release from certification so long as he remains in the BOP's custody — is not at all essential to avoid an absurd result. Importantly, such a construction of § 4248 would create a collateral problem by undermining the statute's stay-of-release provision. *See* § 4248(a).

## B.

The Dismissal Order is also flawed by its invocation of the *in pari materia* principle of statutory construction, which the district court used to justify its reliance on § 4241.[9] We have interpreted the principle to mean that "adjacent statutory subsections that refer to the same subject matter" should be read harmoniously. *Va. Int'l Terminals, Inc. v. Edwards*, 398 F.3d 313, 317 (4th Cir. 2005). The principle of *in pari materia* is applicable, however, only "where the meaning of a statute is ambiguous or doubtful." *N. Pac. Ry. Co. v. United States*, 156 F.2d 346, 350 (7th Cir. 1946); *see also Greenport Basin & Const. Co. v. United States*, 260 U.S. 512, 516 (1923) (rejecting argument that two revenue statutes should be read *in pari materia* where "the language of the act is clear," and there is thus "no room for argument . . . drawn from other revenue measures"). The Dismissal Order, however, failed to identify any ambiguity in the methodology employed by § 4248 to initiate the civil commitment of sexually dangerous persons who are in BOP custody. Importantly, we are unable to discern any such ambiguity.

---

[9]*In pari materia* is generally accepted as being the Latin term for "in like material or substance." John Gray, *Lawyers' Latin: A Vade-Mecum* 72 (2002).

Moreover, the Dismissal Order did not recognize or acknowledge the fundamentally different purposes of the commitment provisions embodied in § 4241 and § 4248. These different purposes undermine the district court's analysis in this case, because the principle of *in pari materia* has no force where two statutes "superficially relat[e] to similar subjects," but "a finer examination reveal[s] that the purposes underlying the laws var[y]." *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 990 (7th Cir. 2001). This limitation on applicability is instructive, because § 4241 and § 4248 target different groups and have different goals. Section 4248 sets forth the commitment procedures for "sexually dangerous *person[s]*" who are in federal custody, and is designed to protect the public from such persons. § 4248(a) (emphasis added); *see also Comstock*, 130 S. Ct. at 1961 ("As federal custodian, [the federal government] has the constitutional power to act in order to protect nearby (and other) communities from the dangers [sexually dangerous] federal prisoners may pose.").

Section 4241, in contrast to § 4248, constitutes the proverbial "horse of a different color." Section 4241 addresses the circumstances under which the mental competency of a criminal defendant is to be assessed. *See* § 4241(a). It was designed to ensure the integrity of the judicial system, i.e., protecting a defendant from criminal proceedings that he cannot understand, and barring prosecutors from pursuing such proceedings against mentally defective defendants. *See id.* As the Supreme Court has explained, "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subject to a trial." *See Drope v. Missouri*, 420 U.S. 162, 171-72 (1975). Section 4241 is thus a codification of this well-settled proposition.

The divergent purposes of § 4241 and § 4248 also illustrate that the Dismissal Order's approach to the civil commitment process would prove unworkable. Section 4241 does not pro-

vide for a commitment on the basis of the criteria of § 4248 — that is, based on a prisoner's sexual dangerousness. Rather, § 4241 authorizes a trial court to order a "hearing to determine the mental competency of the defendant," where there is reasonable cause to believe that he is unable to understand and participate in criminal proceedings pending against him. § 4241(a). If the court, after conducting a § 4241 competency hearing, finds by a preponderance of the evidence that the defendant lacks the requisite mental competency, he is committed to custody pending improvement of his mental condition or further proceedings. *See* § 4241(d).

Nevertheless, this record offers no basis for concluding that any of these Respondents are also defendants in a federal court, or that any are suffering from a mental disease or defect rendering him or them mentally incompetent within the meaning of § 4241. More specifically, there have been no allegations or showings that any of the Respondents are "unable to understand the nature and consequences of the proceedings against [them] or to assist properly in [their] defense." § 4241(a). Rather, the Respondents are simply certified as sexually dangerous persons — under the first category of eligible individuals (prisoners in the custody of the BOP) — within the meaning of § 4248. As a result, it is not at all apparent that any of the Respondents, if released, would be subject to commitment under § 4241, as there would then be no "proceedings" pending against any of them — at least until some effort to modify or revoke a term of supervised release has been initiated. As such, a civil commitment under § 4241 is not a proper first step in § 4248 commitment proceedings against prisoners such as the Respondents.

## C.

Finally, the district court erred by invoking the canon of constitutional avoidance to justify creation of its alternative commitment scheme. This canon has no application to the construction of a statute in a manner that is incompatible with

its plain terms. *See Boumediene v. Bush*, 553 U.S. 723, 787 (2008) ("The canon of constitutional avoidance does not supplant traditional modes of statutory interpretation."). As the Supreme Court has recognized,

> [s]tatutes should be construed to avoid constitutional questions, but this interpretive canon is not a license for the judiciary to rewrite language enacted by the legislature. Any other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress by Art. I, § 1 of the Constitution.

*Salinas v. United States*, 522 U.S. 52, 60-61 (1997) (internal quotation marks and citations omitted). As we have explained, § 4248 is not ambiguous with respect to how civil commitment proceedings are to be initiated against federal prisoners whom the government believes to be sexually dangerous. Thus, the canon of constitutional avoidance does not countenance the Dismissal Order's alternative commitment scheme.[10]

---

[10]Although the Respondents vigorously defend the Dismissal Order's alternative commitment scheme, they present another rationale for an affirmance thereof. The Respondents contend, in the alternative, that we should affirm the district court because of readily apparent due process violations that have resulted from the Respondents' prolonged detentions without being accorded merits hearings on their § 4248 certifications. This contention, of course, is being presented for the first time on appeal. Because the district court did not address and rule on this due process argument, we decline to resolve it.

Nevertheless, it bears repeating that the Respondents remain in prison absent any judicial determination that they yet belong there. Indeed, if not for the legal uncertainties attendant to the civil commitment provisions of the Adam Walsh Act and the continuing detention of the Respondents thereby occasioned, some of them might well by now have completed their terms of supervised release and satisfied their obligations to society. We trust that the proceedings on remand will move forward with dispatch and not further exacerbate the grim delay in achieving resolution of these matters.

IV.

Pursuant to the foregoing, we vacate the Dismissal Order and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

WYNN, Circuit Judge, concurring:

I concur in the majority's opinion, which applies un-ambiguous statutory language to conclude that proceeding under 18 U.S.C. § 4248 is the proper way for the government to pursue the civil commitment of an allegedly sexually dangerous person who is in the custody of the Bureau of Prisons, even when that person is serving a prison sentence that includes a period of supervised release. I write separately to emphasize what is touched upon in footnote 10 of the majority opinion — that the application of 18 U.S.C. § 4248 in these cases raises serious constitutional questions related to the due process rights of Respondents. Specifically, it is troubling that Respondents have been detained, in some cases for years, without governmental justification for their detention at a merits hearing on their § 4248 certifications.

To be sure, our courts have yet to address the constitution-ality of prolonged detention pursuant to the Adam Walsh Act prior to a hearing on the merits. However, many courts have held that the due process rights guaranteed by the Constitution entitle one to a final determination as to the validity of his confinement within a reasonable period of time. For instance, in *In re Barnard*, 455 F.2d 1370 (D.C. Cir. 1971), the court, in reviewing a District of Columbia statute providing for emergency involuntary commitment, stated "where a person, said to be mentally ill and dangerous, is involuntarily detained, he must be given a hearing within a reasonable time to test whether the confinement is based upon probable cause." *Id.* at 1374. Indeed, even where emergency detention

can be justified on the basis of a potential danger resulting from the detainee's mental condition, the need remains to justify the detention without substantial delay.

In *Logan v. Arafeh*, 346 F. Supp. 1265 (D. Conn. 1972), aff'd sum. sub nom. *Briggs v. Arafeh*, 411 U.S. 911 (1973), the court considered the constitutionality of a Connecticut statute under which a patient could be involuntarily committed for no longer than forty-five days without a judicial determination of the validity of his confinement. *Id.* at 1267-68. The court stated "[t]he emergency commitment to a hospital for mental illness on a temporary basis of a person on the finding of a physician that he is a danger to himself or others without prior notice and hearing does not offend the due process clause provided there is available to him an adequate means of testing the validity of his confinement within a reasonable period of time." *Id.* at 1268; *see also Coll v. Hyland*, 411 F. Supp. 905, 910 (D. N.J. 1976)(concluding that in the context of civil commitment, "a hearing held within a reasonable time after confinement begins is an acceptable means of supplying requisite due process.").

Similarly, in *Lynch v. Baxley*, 386 F.Supp. 378, 387-88 (M.D. Ala. 1974), the court struck down Alabama's emergency involuntary commitment statute and stated:

> Since the interests of these emergency detainees in retaining their liberty and avoiding unwarranted civil commitment are comparable to the interests of persons accused of criminal offenses in retaining their liberty and avoiding wrongful incarceration, the burden on the state to justify the emergency detention must be similarly heavy. As one means of assuring that persons accused of crimes are not held in custody and involuntarily deprived of their liberty without a showing of probable cause to believe that they have committed punishable offenses, it is generally required that such persons be brought before a judi-

cial office without unnecessary delay after arrest to determine whether they are being detained on probable cause. Likewise, in the situation here, where a person said to be mentally ill and dangerous is involuntarily detained, he must be given a hearing within a reasonable time to test whether the detention is based upon probable cause to believe that confinement is necessary under constitutionally proper standards for commitment.

*Id.* at 387-88 (citations omitted).

Most assuredly, the lengthy detention of Respondents without a reasonably prompt adjudication of the government's petitions for their commitment was one of the "due process concerns" that motivated the district court's statutory interpretation. *See United States v. Broncheau*, No. 06-HC-2219(L), 2010 WL 4484635 at * 9 (E.D.N.C. Oct. 29, 2010) ("[S]ection 4248 simply does not afford any respondent a reasonable time in which to adjudicate the government's petition for his commitment."). But, as the majority recognizes, the district court stopped short of making a constitutional ruling. Instead, without finding any ambiguity in the language of the statute, the district court sought to remedy a constitutional problem through an unsupportable reading of the statutory scheme. That error compels us to vacate the district court's order and remand.

Additionally, as pointed out by the majority, while the constitutional due process concerns may persist, they were not identified by Respondents, who failed to raise an as-applied due process challenge to the statute.* This itself counsels us

---

*The only procedural due process concerns raised by Respondents, such as the contentions that the right to a speedy trial was violated or that notice was inadequate, were explicitly tied to the argument that § 4248 proceedings, although nominally civil, were actually criminal. This line of argument was foreclosed when, in *Comstock II*, we reiterated that § 4248 is in fact a civil commitment statute. *See* 627 F.3d at 520 ("[T]he purpose and structure of the commitment process render it unlike any criminal prosecution.").

to avoid passing on the issue in the first instance. *See Single-ton v. Wulff*, 428 U.S. 106, 120-21 (1976) (recognizing the general rule that a court of appeals will not consider an issue raised for the first time on appeal). I recognize that "there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt or where injustice might otherwise result." *Id.* at 121. Yet, I cannot conclude that such circumstances are present in this case as would warrant departure from well-established principles of judicial review.