PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Petitioner-Appellant,*

v.

GERALD WAYNE TIMMS,

        *Respondent-Appellee.*

No. 11-6886

UNITED STATES OF AMERICA,

        *Petitioner-Appellee,*

v.

GERALD WAYNE TIMMS,

        *Respondent-Appellant.*

No. 11-6941

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(5:08-hc-02156-BO)

Argued: October 28, 2011

Decided: January 9, 2012

Before TRAXLER, Chief Judge, and MOTZ and AGEE,
Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Agee wrote the opinion, in which Chief Judge Traxler and Judge Motz concurred.

---

**COUNSEL**

**ARGUED:** Ian James Samuel, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for the United States. Kearns Davis, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North Carolina, for Gerald Wayne Timms. **ON BRIEF:** Tony West, Assistant Attorney General, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Thomas G. Walker, United States Attorney, Raleigh, North Carolina, for the United States. Eric M. David, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North Carolina, for Gerald Wayne Timms.

---

**OPINION**

AGEE, Circuit Judge:

The Government appeals from the judgment of the District Court for the Eastern District of North Carolina dismissing the Government's action to civilly commit Gerald Wayne Timms as a "sexually dangerous person" under 18 U.S.C. § 4248 ("§ 4248" or "the statute"). The district court held that the statute, as applied to Timms, violated the Due Process and Equal Protection Clauses of the United States Constitution. Timms cross-appeals, asserting additional grounds upon which § 4248 should be found unconstitutional. For the reasons set forth below, we reverse the district court's judgment on the grounds the Government raises, affirm as to the grounds Timms raises, and remand for the district court to

determine whether Timms satisfies the criteria for commitment as a "sexually dangerous person."

## I.   Factual and Procedural Background

Timms' case is among the first cases arising out of the civil commitment system established by § 4248 as part of the Adam Walsh Child Protection and Safety Act of 2006, ("the Act"), Pub. L. No. 109-248 § 302, 120 Stat. 587, 620-22. The background of Timms' commitment proceeding, as well as the context for the arguments made in this appeal, are inextricably connected to the litigation of § 4248 cases in this Circuit thus far.

Section 4248 authorizes the civil commitment of, inter alia, individuals who are in the custody of the Bureau of Prisons ("BOP") and who are determined to be "sexually dangerous person[s]." A "sexually dangerous person" is defined under the Act as someone "who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." 18 U.S.C. § 4247(a)(5); 28 C.F.R. § 549.91. The inquiry is thus two-fold, requiring the district court to make both retrospective and prospective findings.[1]

The commitment process begins when the Attorney General, the Director of the BOP, or their designee certifies an individual as a "sexually dangerous person" in the district

---

[1]The implementing regulations further define "sexually violent conduct" and "child molestation." 28 C.F.R. §§ 549.92-93. A person is deemed "sexually dangerous to others" if the individual "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6); *see also* 28 C.F.R. § 549.94 (defining "sexually dangerous to others"); 28 C.F.R. § 549.95 (setting guidelines for determining if an individual will have "serious difficulty in refraining from sexually violent conduct or child molestation if released").

court where that individual is in custody. The certification automatically stays the prisoner's release from BOP custody. § 4248(a). The district court is then required to "order a hearing to determine whether the person is a sexually dangerous person." *Id.* If "the court finds by clear and convincing evidence that the person is a sexually dangerous person," the person is committed to the custody of the Attorney General, either for release to a state civil commitment system or to a federal facility until such time as the person is determined no longer to be sexually dangerous. § 4248(d)-(e).

When the Act was first implemented, individuals were certified under § 4248(a) in various district courts around the country, depending on the location of that person's BOP place of incarceration. Early in the process, however, the BOP began transferring potential candidates for § 4248 civil commitment to the Federal Correctional Institute in Butner, North Carolina ("FCI-Butner") for an initial assessment, such that § 4248 civil commitment actions are now being reviewed almost exclusively through that facility.[2] As a result, nearly all § 4248 civil commitment actions nationwide are now filed and adjudicated in the Eastern District of North Carolina, and then appealed to this Court.[3]

---

[2]The BOP apparently selected FCI-Butner as the facility for § 4248(a) commitments based on an established sex offender treatment program for BOP inmates, with existing staff and other resources for the development of the § 4248 civil commitment treatment program. Toward that end, FCI-Butner has established a Commitment and Treatment Program for Sexually Dangerous Persons, which oversees § 4248 commitments, from pre-certification evaluations to post-commitment treatment and ongoing evaluation.

[3]In documentation provided to the Court at our request prior to oral argument, the parties represented that the Government has certified approximately 130 individuals as "sexually dangerous persons" under § 4248 since the statute's enactment. (Docket Entry Nos. 53, 54, 55, 58, 59, and 60 (Parties' responses to Court Order of Oct. 18, 2011 directing the parties to prepare and file a chart containing certain information related to the processing of § 4248 commitment actions).) Of those certifi-

The first challenge brought before us regarding the constitutionality of § 4248 was in *United States v. Comstock*, 551 F.3d 274 (4th Cir. 2009), *rev'd*, 130 S. Ct. 1949 (2010) ("*Comstock I*"). As we previously summarized,

> In *Comstock*, the [Government] certified five respondents in its custody as sexually dangerous under § 4248 and requested evidentiary hearings. The cases were assigned to Judge Earl Britt, Senior District Judge in the Eastern District of North Carolina, who appointed the federal public defender to represent the respondents. However, no evidentiary hearings were held. Instead, Judge Britt granted the respondents' motions to dismiss as a matter of law, on the ground that § 4248 exceeded the scope of Congress's authority under the United States Constitution to enact legislation and, in the alternative, on the ground that the statute facially violated respondents' due process rights. *See United States v. Comstock*, 507 F. Supp. 2d 522, 526, 559 (E.D.N.C. 2007).

---

cations, 116 were filed in the Eastern District of North Carolina, all but nine of which were filed prior to July 2011. (Docket Entry No. 54, part 4, Magistrate Judge Gates' "Update on Hearing Status of § 4248 Cases" Memorandum of Oct. 26, 2011, at p. 1.)

It appears, then, that less than two dozen § 4248(a) certifications have been filed outside the Eastern District of North Carolina. *See, e.g.*, *United States v. Shields*, 649 F.3d 78 (1st Cir. 2011) (appeal from the United States District Court for the District of Massachusetts); *United States v. Carta*, 592 F.3d 34 (1st Cir. 2010) (same); *United States v. Volungus*, 595 F.3d 1 (1st Cir. 2010) (same); *United States v. Hernandez-Arenado*, 571 F.3d 662 (7th Cir. 2009) (appeal from the United States District Court for the Southern District of Illinois); *United States v. Tom*, 565 F.3d 497 (8th Cir. 2009) (appeal from the United States District Court for the District of Minnesota); *United States v. Wetmore*, 766 F. Supp. 2d 319 (D. Mass. 2011); *United States v. Wilkinson*, 646 F. Supp. 2d 194 (D. Mass 2009); *United States v. Hunt*, 643 F. Supp. 2d 161 (D. Mass. 2009); *United States v. Abregana*, 574 F. Supp. 2d 1123 (D. Haw. 2008); *United States v. Harnden*, 2006 U.S. Dist. LEXIS 97341 (C.D. Cal. Dec. 28, 2006).

> However, Judge Britt stayed release of the *Comstock* respondents from custody pending an appeal from his decision. *Id.* at 560.

*Timms v. Johns*, 627 F.3d 525, 526-27 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 2938 (May 31, 2011) ("*Timms I*").

On October 23, 2008, while *Comstock I* was pending before this Court, the Government filed a certificate in the District Court for the Eastern District of North Carolina, seeking to commit Timms as a "sexually dangerous person" under § 4248. At the time, Timms was in BOP custody, serving a 100-month sentence for soliciting and receiving child pornography by mail, in violation of 18 U.S.C. § 2252A(a)(2). He was scheduled to be released from BOP custody on November 11, 2008, but upon the Government's § 4248 certification, Timms' release was stayed.[4] Timms' commitment proceeding was assigned to Judge W. Earl Britt, who, by order dated October 28, 2008, appointed the federal public defender to represent Timms and *sua sponte* placed Timms' proceeding in abeyance pending the outcome of the appeal in *Comstock I*.[5] Neither Timms nor his appointed counsel objected to Judge

---

[4]In addition to the conviction for which he was then incarcerated, the Government's certification noted two convictions in Florida state court that were relevant to its decision to certify Timms: a second-degree murder conviction for stabbing a woman to death while engaging in (initially) consensual sex and a sexual battery conviction for raping a woman who was friends with the murder victim seventeen days after the murder.

The Government's certification also relied on Timms' "initial psychological diagnoses of pedophilia, sexual sadism, marijuana abuse, and antisocial personality disorder, and initial risk assessments for sexual offense recidivism[,] which 'indicat[ed] that [Timms would] have serious difficulty refraining from sexually violent conduct or child molestation if released' from custody." *Timms I*, 627 F.3d at 527 (second two alterations in original).

[5]Timms' commitment was not unique in this regard, as it was the district court's standing practice to stay proceedings pending *Comstock*'s resolution.

Britt's decision, or filed a motion to conduct the § 4248 commitment hearing in this proceeding.

However, within days of the Government filing the § 4248 certification,[6] Timms filed a separate pro se habeas corpus action pursuant to 28 U.S.C. § 2241 against the Warden at FCI-Butner. Timms requested that § 4248 be declared unconstitutional such that he would be entitled to a writ of habeas corpus, or in the alternative, that his commitment hearing occur, so that he could be released as scheduled from his incarceration at FCI-Butner. Timms' habeas action was assigned to Judge Terrence W. Boyle.

In January 2009, this Court affirmed the dismissal of the § 4248 certifications in *Comstock I*, holding that Congress lacked constitutional authority to enact the statute. 551 F.3d at 276. The United States Supreme Court subsequently granted certiorari. During this time, the district court's stay remained in effect, thus holding Timms beyond the date of his scheduled release from federal custody for the service of his criminal sentence.

While the *Comstock I* appeal was pending, Judge Boyle conducted initial hearings in Timms' habeas proceeding and, inter alia, appointed private counsel to represent him. Timms' newly-appointed counsel renewed a request that Timms be immediately released on the basis of our holding in *Comstock I* or, in the alternative, that the district court conduct an evidentiary hearing on Timms' sexual dangerousness under § 4248. Counsel for Timms also alleged § 4248 was unconstitutional for additional reasons beyond those upon which our holding in *Comstock I* was based. In March 2010, Judge Boyle granted Timms' petition for habeas corpus, holding that

---

[6]Timms' pro se habeas petition was filed October 26, 2008, just three days after the Government's certification in this commitment action and two days prior to the district court's order placing the commitment action in abeyance.

§ 4248 was unconstitutional (both on its face and as applied to Timms), and ordering his immediate release. Timms' release was stayed pending the Government's appeal to this Court.

In May 2010, the United States Supreme Court issued its opinion in *Comstock*, reversing our decision that § 4248 was unconstitutional, and holding that Congress properly enacted the statute pursuant to the Necessary and Proper Clause of the United States Constitution, Art. I, § 8, cl. 18. *United States v. Comstock*, 130 S. Ct. 1949, 1954 (2010). The Supreme Court remanded the case to this Court to consider the additional grounds presented, but not decided, in *Comstock I*, and upon which the district court in that case had held that § 4248 was unconstitutional. *Id.* at 1955, 1965. This Court heard oral argument in the remanded case in September 2010, *in seriatim* with the appeal of Timms' habeas action.

Our decisions in those cases were both filed on December 6, 2010. *Timms I*, 627 F.3d 525; *United States v. Comstock*, 627 F.3d 513 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 3026 (June 20, 2011) ("*Comstock II*"). In *Comstock II*, we reversed the district court's judgment concerning the burden of proof under § 4248. We held that the statute did not violate the Due Process Clause by requiring a court to find by "clear and convincing evidence" — rather than "proof beyond a reasonable doubt" — that the individual "has engaged or attempted to engage in sexual violence or child molestation" and is "sexually dangerous to others." 627 F.3d at 515-25; *cf.* § 4248(d), 4247(a)(5). In *Timms I*, we also reversed the district court's judgment, holding that habeas corpus relief was not appropriate because Timms failed to exhaust his remedies in the § 4248 commitment proceeding prior to pursuing the writ. 627 F.3d at 530-33. Both cases were remanded to the district court, with instructions for the court in *Comstock II* to proceed to the merits with the commitment actions and in *Timms I* to dismiss the habeas petition without prejudice. 627 F.3d at 525; 627 F.3d at 533.

As noted, the trial proceedings in the instant commitment action had been held in abeyance since October 2008.[7] In August 2010, then-Chief Judge Louise W. Flanagan for the District Court for the Eastern District of North Carolina issued a standing order related to the processing of § 4248 commitment actions in that district. The order's terms included the following provision regarding motions for hearings:

> Until such time as the final determination by an appellate court of "any claim that the statute or its application denies equal protection of the laws, procedural or substantive due process, or any other rights guaranteed by the Constitution[,]" if an individual respondent would like to proceed with the litigation of the government's petition for his commitment, counsel for the respondent shall inform the court of the respondent's desire to proceed with a hearing by filing a motion for a hearing. Such motion shall be filed . . . as soon as practicable after the respondent informs his counsel of his desire to litigate the commitment petition.

Aug. 4, 2010 Standing Order of the Court, § 3(b) (citation omitted).

By the time of the Standing Order, Timms' commitment

---

[7]In April 2010, after Judge Boyle had granted Timms' petition for habeas corpus in that proceeding, but before the appeal had been considered, the Government moved for a probable cause hearing in Timms' commitment action. Judge Britt denied the motion, observing "the government has cited to no cases showing the court's authority to hold such a hearing in light of the disposition of the habeas petition." (*Timms*, Case No. 5:08-hc-02156-BO, Docket Entry No. 8 (motion) and 11 (order denying motion), Apr. 6-7, 2010.) There were also occasional motions for release or to continue the stay, as well as motions to withdraw as Timms' counsel, but none of these motions altered the substantive status quo of abeyance in the commitment action.

action had been transferred from Judge Britt to Judge Boyle. It appears from the record that Judge Boyle does not follow the standing order's provisions, although it is not clear how that policy was made known. Regardless, Timms did not move for a hearing in this proceeding following the issuance of the standing order.

In January 2011, in light of this Court's decision in his habeas action, Timms filed a pro se motion to dismiss this case (the pending commitment action) on various constitutional grounds, both facially and as applied to him. Judge Boyle subsequently denied the motion because Timms was represented by counsel. On January 14, 2011, Judge Boyle issued a text order regarding all pending § 4248 commitment actions pending before him and scheduled a status hearing in all of the cases for the following week. Shortly thereafter, Timms' counsel from his habeas action notified the court that it would be representing him in the commitment action and the public defender's office withdrew from representing Timms. In early February 2011, Timms by counsel, moved for release from custody on a variety of constitutional grounds, or in the alternative, for the court to hold a hearing on the merits as to whether Timms could be civilly committed as a "sexually dangerous person" under § 4248.

Judge Boyle granted Timms' motion to hold the commitment hearing, but deferred consideration of the constitutional challenges raised in Timms' motion to dismiss. The parties then coordinated scheduling of the commitment hearing, allotting time to prepare the requisite psychological evaluations that would form the basis of the expert testimony needed to determine the issue of Timms' sexual dangerousness.

Timms' commitment hearing was held May 25-27, 2011, at which time the parties presented evidence as to whether Timms satisfied the § 4248 criteria for civil commitment as a "sexually dangerous person." The district court's June 30, 2011 final order did not, however, address the merits of

whether Timms was a "sexually dangerous person." Instead, the court analyzed the constitutional challenges in the motion to dismiss, granting the motion in part and denying it in part, and ordering Timms' immediate release to the custody and supervision of the United States Probation Office to serve the term of supervised release under his existing criminal sentence.

The district court rejected Timms' "broad strand of argument" "that § 4248, notwithstanding its civil label, creates a criminal proceeding." (J.A. 22.) Relying on *Comstock II*, the district court also rejected Timms' contention that § 4248 is unconstitutional because it requires proof by "clear and convincing evidence" (rather than "beyond a reasonable doubt") of an individual's predicate bad acts. However, as discussed more fully below, the district court agreed with Timms that, as applied to him, § 4248 deprived him of equal protection of the law under the Fourteenth and Fifth Amendments and of due process under the Fifth Amendment. The court "decline[d] [Timms'] invitation to facially invalidate" § 4248 on those bases, finding that he failed to satisfy the "heavy burden" set forth in *United States v. Salerno*, 481 U.S. 739, 745 (1987). (J.A. 47.) The district court concluded that the constitutional violations "separately and independently warrant[ed] dismissal" and ordered Timms' immediate release. (J.A. 48.)

The Government opposed Timms' immediate release and moved in the district court to continue the stay pending this appeal. At the same time, the Government noted a timely appeal and moved for an emergency stay pending appeal in this Court. The district court denied the motion for stay, but we granted the motion pending before us and ordered expedited briefing. Timms then noted a timely cross-appeal. We heard oral argument in this case on October 28, 2011 *in seriatim* with the appeal of another § 4248 civil commitment case, *United States v. Hall*, No. 11-7102, in which Judge Boyle also dismissed the Government's certification relying on the same constitutional grounds relied on in Timms' case, but making

a merits determination that Hall did not meet § 4248's defini-tion of a "sexually dangerous person."

We have jurisdiction over the pending appeal under 28 U.S.C. § 1291.

## II.

The Government raises two issues on appeal: whether the district court erred in finding that § 4248 deprives Timms and other similarly situated individuals in BOP custody of equal protection; and whether it erred in holding that Timms was entitled to release because the delay between Timms' § 4248 certification and the commitment hearing violated his right to due process of law. Timms cross-appeals, contending the dis-trict court erred in determining § 4248 was a civil, rather than criminal, statute, and also erred in refusing to find § 4248 facially unconstitutional.[8]

We review the district court's ruling on a constitutional challenge to a federal statute de novo. *United States v. Buculei*, 262 F.3d 322, 327 (4th Cir. 2001).

### A.    Equal Protection

In holding that § 4248 deprived Timms, and others simi-

---

[8]Timms also raises two arguments he acknowledges are foreclosed by this Court's precedent, but which he nonetheless seeks to preserve. First, he contends that § 4248 violates the Due Process Clause because it only requires the necessary past conduct to be supported by "clear and convinc-ing evidence" rather than by "proof beyond a reasonable doubt." In *Com-stock II*, we held that § 4248's standard of "clear and convincing evidence" satisfied due process. 627 F.3d at 524. Second, Timms asserts the Government cannot proceed with a § 4248 certification because he was sentenced to a period of supervised release. We rejected an identical argument in *United States v. Broncheau*, 645 F.3d 676 (4th Cir. 2011). Based on our clear and binding precedent, we do not consider these issues further.

larly situated, of equal protection under the Fourteenth and Fifth Amendments, the district court relied on *Baxstrom v. Herold*, 383 U.S. 107 (1966), and related cases. In its opinion, the district court stated:

> [s]ince the Government cannot provide less protection during civil commitment for prisoners than for nonprisoners, it follows that the government cannot commit prisoners while categorically shielding nonprisoners from civil commitment altogether. It is illegitimate, arbitrary, and capricious for a state to subject only prisoners to civil commitment, leaving the rest of the population untouched. Yet that is exactly what § 4248 instructs the Executive to do.

(J.A. 30.)

The district court rejected the Government's argument that the limitation to persons in BOP custody was necessary because Congress lacked a general police power, determining that this argument would "wrongly" allow Congress' "enumerated federal powers to bypass the Constitution's equal protection guarantee." (J.A. 31.) And it concluded that "[i]f the federal government does not have the power to equally apply its civil commitment scheme to everyone, then it should not civilly commit anyone." (J.A. 31.) Lastly, the district court held that subjecting individuals in BOP custody to the possibility of civil commitment under § 4248 "bears no rational relationship to the purpose of shielding the public from the dangers of sexual predation" because sexually dangerous individuals exist everywhere. (J.A. 31.)

On appeal, the Government asserts the district court erred in concluding that § 4248 violates the Equal Protection Clause because the statute rationally distinguishes between those within Congress' power to regulate and those outside of it. The Government further contends that the district court's analysis turns the Supreme Court's decision in *Comstock* "on

its head" because that case affirmed Congress' limited, but appropriately-exercised, constitutional authority to make civil commitments of certain classes of persons, specifically, those in its custody for a federal criminal offense. (Opening Br. 10.) The Government distinguishes *Baxstrom* based on the type of equal protection analysis necessary there — whether individuals subject to a state civil commitment scheme must be treated similarly once subject to it — and the analysis here, whether Congress rationally decided which individuals would be subject to a federal civil commitment scheme.

In reaching its equal protection decision, the district court held "that the level of scrutiny is irrelevant in this case as § 4248 fails to pass even rational basis review." (J.A. 29.) The district court nonetheless noted that it was "swayed . . . by extensive precedent holding that equal protection challenges of civil commitment statutes receive only rational basis review" and cited a number of circuit court of appeals decisions to that effect. (J.A. 28.) On appeal, the Government contends rational basis review is the appropriate level of judicial scrutiny, while Timms argues for a higher degree of review.

Our inquiry has two parts in order to resolve Timms' equal protection claim. First, we must determine the appropriate standard of review to apply. And, second, we must determine whether the district court erred in concluding § 4248 does not satisfy that standard.

### 1.   Standard of Review

The Supreme Court has not expressly identified the proper level of scrutiny to apply when reviewing constitutional challenges to civil commitment statutes. The only other circuit court of appeals to consider whether § 4248 satisfied the demands of the Equal Protection Clause applied rational basis review. *United States v. Carta*, 592 F.3d 34, 44 (1st Cir. 2010) (applying rational basis review without further analysis); *see also United States v. Shields*, 522 F. Supp. 2d 317,

340-41 (D. Mass. 2007) (determining rational basis review should apply to § 4248 equal protection argument given the lack of clear Supreme Court authority requiring heightened scrutiny).

As a general principle of Equal Protection Clause jurisprudence, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). However, higher levels of scrutiny will be applied if a statute implicates a fundamental right or suspect class. *Id.* at 439-41. No Supreme Court case has applied a higher level of scrutiny than rational basis review in the context of civil commitment.

Timms primarily relies on two Supreme Court cases as support for applying heightened scrutiny.[9] The Supreme Court's plurality opinion in *Foucha v. Louisiana*, 504 U.S. 71 (1992) (plurality opinion), suggests that involuntary civil commitment would conflict with the fundamental right of "freedom from physical restraint." *Id.* at 86. More particularly, the Supreme Court's decision in *Addington v. Texas*, 441 U.S. 418 (1979), also recognized that civil commitment "constitutes a significant deprivation of liberty." *Id.* at 425. Timms extrapolates from these statements on the nature of the right at issue in civil commitment proceedings that the Supreme Court would apply heightened scrutiny in making an equal protection analysis of a civil commitment statute.

We do not believe that this conclusion follows because, despite the opportunity to do so, the Supreme Court has never expressly applied anything other than rational basis review to the question of whether a civil commitment scheme satisfies equal protection. For example, neither of the cases relied upon by Timms, *Foucha* and *Addington*, addressed the equal pro-

---

[9]Timms alternatively argues that strict scrutiny or, in the alternative, some intermediary level of scrutiny beyond rational basis should apply.

tection standard of review. The language in *Foucha*, on which Timms relies, is not contained in the opinion of the Court, but in a plurality opinion as to the judgment on that issue, *cf.* 504 U.S. at 72, 85-86. In *Addington*, the language Timms cites is in the context of the due process analysis, not equal protection. *Cf.* 441 U.S. at 425. Furthermore, in *Baxstrom*, the Supreme Court concluded that a state's civil commitment scheme violated the Equal Protection Clause, but in so doing, it observed there was no "semblance of rationality" for the statute's distinctions, thus appearing to apply rational basis review. *Id.* at 115.

Because the Supreme Court has never required greater than rational basis review, that rational basis review is the generally-applicable standard, and in light of the language in *Baxstrom*, we hold that rational basis review is the appropriate level of judiciary scrutiny when examining whether § 4248 violates the Equal Protection Clause. In so doing, we apply the same standard the First Circuit Court of Appeals used in *United States v. Carta*, 592 F.3d 34, 44 (1st Cir. 2010), when examining this precise issue. In addition, we reach the same conclusion of several of our sister circuit courts of appeals that have addressed this issue in the context of other civil commitment statutes. *See, e.g.*, *Varner v. Monohan*, 460 F.3d 861, 865 (7th Cir. 2006) (holding the difference between a person who has been convicted of sex offenses and one who has not implicates "neither fundamental rights nor suspect classes"); *United States v. Weed*, 389 F.3d 1060, 1071 (10th Cir. 2004) (holding that insanity acquitees are not members of a suspect class, nor is a fundamental right at stake in their civil commitment). *But see Ernst J. v. Stone*, 452 F.3d 186, 200-01 & 200 n.10 (2d Cir. 2006), and *Francis S. v. Stone*, 221 F.3d 100, 111-12 (2d Cir. 2000) (acknowledging that the Supreme Court has never expressly used strict scrutiny, but relying on *Addington* and other Supreme Court cases to conclude "[s]ome form of intermediate level scrutiny appears to have been used" and therefore adopting a heightened interme-

diate standard of review for civil constitutional challenges to civil commitment schemes).

Under rational basis review, a classification enjoys a strong presumption of validity and is constitutional as long as "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993). Congress, in creating categories of treatment, "need not actually articulate at any time the purpose or rationale supporting its classification." *Id.* (quotation marks and citation omitted). "Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quotation marks and citation omitted). "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 320-21 (quotation marks and citation omitted). Moreover, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 321 (quotation marks and citation omitted).

With this standard in mind, we turn to the merits of the Government's argument that the district court erred in concluding § 4248 deprives Timms and other similarly-situated individuals in BOP custody of equal protection.

## 2.   Merits

The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne*, 437 U.S. at 439. But at the most basic level, individuals in BOP custody are not similarly situated to individuals who are

not in BOP custody. For this reason, we hold that the district court erred in concluding § 4248 violated the Equal Protection Clause as applied to Timms and others similarly situated.

The district court placed too much weight on superficial similarities between the inquiry in this case and the Supreme Court's decision in *Baxstrom*. There, the Supreme Court held that a state prisoner "was denied equal protection of the laws by the [state's] statutory procedure under which a person may be civilly committed at the expiration of his penal sentence without the jury review available to all other persons civilly committed in" the state and "without a judicial determination that he is dangerously mentally ill" as required to civilly commit all non-prisoners. 383 U.S. at 110. The Supreme Court found "no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments" for purposes of whether a person should be afforded judicial review before a jury. *Id.* at 111-12. It also concluded that "[w]here the State has provided for a judicial proceeding to determine the dangerous propensities of all others civilly committed . . . , it may not deny this right to a person in Baxstrom's position solely on the ground that he was nearing the expiration of a prison term." *Id.* at 114.

The Supreme Court's *Baxstrom* decision was not a broad assertion that prisoners and non-prisoners must always be treated identically in order to satisfy the strictures of the Equal Protection Clause. Rather, the Court's analysis focused on the particular classifications being made and the failure to find a rational basis between that classification and the different treatment set forth in the statute. Because the state in *Baxstrom* subjected any allegedly mentally ill individuals to civil commitment, it had to articulate a rational basis for affording prisoners and non-prisoners different levels of rights during the commitment proceedings. The Supreme Court concluded it failed to do so and the state statute at issue therefore deprived prisoners of equal protection. A similarly statute-specific analysis must take place here.

In contrast to the statute in *Baxstrom*, which provided for civil commitment of prisoners and non-prisoners alike (with different procedural protections for the two groups), § 4248 only authorizes the civil commitment of certain prisoners, primarily those in BOP custody. That limitation is rationally related to the fact that Congress, unlike the several states, lacks a general police power.[10] As such, it is not a "capricious" classification based on the status of incarceration, but rather a reasonable recognition that individuals in BOP custody are one of the few groups of persons falling within Congress' limited police power. *Cf. id.* at 115; *see also Carta*, 592 F.3d at 44 ("A state, unlike Congress, has a general police power, whereas the federal government's interest and responsibility here stem from the fact that it already has custody of the prisoner.").

Quite different from the issue in *Baxstrom*, then, the relevant inquiry in this case is whether Congress had a rational basis for subjecting sexually dangerous persons within BOP custody to civil commitment when individuals not within BOP custody are not subject to such commitment. Because the scope of the federal government's authority as to civil commitment differs so significantly from a state's authority, we conclude that there is a rational basis for the distinction Congress drew.

Nor are we persuaded by the district court's assertion that

---

[10]Although the Supreme Court's analysis in *Comstock* does not undertake the dispositive analysis here, it did set out the reasons why Congress limited the statute to certain categories of persons. For example, the Court quoted the Solicitor General's admission that "the Federal Government would not have . . . the power to commit a person who . . . has been released from prison and whose period of supervised release is also completed." 130 S. Ct. at 1965. From this, the Court concluded that "far from [being] a 'general police power,' § 4248 is a reasonably adapted and narrowly tailored means of pursuing the Government's legitimate interest as a federal custodian in the responsible administration of its prison system." *Id.*

the choice Congress made, to civilly commit individuals in BOP custody and not to extend § 4248's scope to all of the limited classes of individuals who could fall within its federal police powers, renders the statute unconstitutional.[11] Contrary to the district court's conclusion, the question in *Baxstrom* as to the equal treatment of individuals once subject to civil commitment is a different inquiry than whether to subject a category of individuals to civil commitment in the first instance. As the Supreme Court has long recognized, Congress may legislate incrementally. *Williamson v. Lee Optical of Okla.*, 348 U.S. 483, 489 (1955) ("[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.").

Consequently, we hold the district court erred in concluding that there was no rational basis for distinguishing individuals in BOP custody from any other class of persons for § 4248 purposes. The district court cited to no authority, nor do we find any, to support its sweeping assertion that if "the federal government does not have the power to equally apply

---

[11]The district court pointed to "a corresponding group of unimprisoned persons subject to Congress' police power: those within the maritime and territorial jurisdiction of the United States" and noted that Congress "ha[d] made no attempt to extend its civil commitment powers to these jurisdictions even though they inevitably contain sexually dangerous persons." (J.A. 31.) It does not follow from those two premises that Congress therefore lacked a rational reason for limiting § 4248 to "sexually dangerous persons" in BOP custody. As the Supreme Court recognized in *Comstock*, Congress enacted § 4248 in order to "act as a responsible federal custodian" of its prisoners by "protect[ing] nearby (and other) communities from the danger federal prisoners may pose." 130 S. Ct. at 1961; *see also id.* at 1956-65. And as an extension of Congress' police power, it "could have reasonably concluded that federal inmates who suffer from a mental illness that causes them to 'have serious difficulty in refraining from [child molestation or] sexually violent conduct,' would pose an especially high danger to the public if released." *Id.* at 1961. It follows in turn that it was rational for Congress to conclude that there was a greater need to protect communities from federal prisoners than from individuals who were simply within the maritime and territorial jurisdiction of the United States.

its civil commitment scheme to everyone, then it should not civilly commit anyone." (J.A. 31.) The Equal Protection Clause does not demand so much. As the Supreme Court recognized in *Baxstrom*, "[e]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." 383 U.S. at 111.

Here, Congress rationally limited § 4248's scope to sexually dangerous persons within BOP custody based on Congress' limited police power and the federal interest in protecting the public from reasonably foreseeable harm from such persons. *Cf. Comstock*, 130 S. Ct. at 1961. Accordingly, the district court erred in holding that § 4248 deprived Timms and other similarly-situated individuals in BOP custody of equal protection of the laws.[12]

### B. Due Process

The Government next challenges the district court's second basis for dismissing Timms' § 4248 commitment action—its conclusion that § 4248's "failure to require a speedy judicial hearing renders that statute unconstitutional as to" Timms. (J.A. 34.) Using the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), the district court determined "what process [was] due" Timms in the commitment action. (J.A. 36 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).) The district court concluded that while some period of post-incarceration deprivation of liberty in § 4248 proceed-

---

[12]Because we hold that the district court erred in determining that § 4248 violated the Equal Protection Clause as applied to Timms and similarly-situated individuals, Timms' argument on cross-appeal that the district court should have found § 4248 facially invalid on this basis also fails a fortiori. *See Urofsky v. Gilmore*, 216 F.3d 401, 427 n.1 (4th Cir. 2000) ("To prevail on their facial challenge, plaintiffs must establish that no set of circumstances exists under which the Act would be valid. By finding the statute valid as applied to these plaintiffs, the facial challenge fails as well.") (internal quotation marks and citation omitted).

ings would be consistent with due process, the period in Timms' case between when he would have been released at the end of his term of incarceration and the § 4248 commitment hearing (nearly thirty-one months) was too long irrespective of the cause or circumstances.

The court held the Government responsible for the "grim delay" in the proceedings against Timms by "delivering [him] into a legal setting where a timely resolution of his case was unlikely" due to ongoing constitutional challenges to § 4248, "waiting until the last moments of [Timms'] criminal sentence to initiate [the] action," and seeking commitment under § 4248 rather than pursuing treatment or commitment under other statutory provisions. (J.A. 45.) Also factoring into the court's conclusion was Timms' "diligent" pursuit of his rights throughout his period of confinement through the habeas action. (J.A. 44.) For these reasons, the district court found "that the Government has unconstitutionally deprived [Timms] of his due process rights under the Fifth Amendment of the United States Constitution" and "should have brought [Timms] before a judicial officer for a final civil commitment hearing within a reasonable time after his civil confinement began." (J.A. 47.)

The Government asserts the district court's analysis improperly attributed the delay in this case to the Government, and that dismissal of the commitment action was the wrong remedy in the event of any due process violation. Recounting the procedural history of Timms' commitment action, the Government observes that the case was properly, and pursuant to the district court's *sua sponte* initiative, placed in abeyance while the constitutional challenges to § 4248 were resolved. And it notes that Timms did not request a hearing in this case (the commitment proceeding) until February 2011. For these reasons, the Government submits that any delay was not attributable to it and thus did not violate Timms' due process rights.

Having reviewed the record and the extant case law, we conclude that while the delay between the end of Timms' period of incarceration and his § 4248 commitment hearing is troubling, it does not rise to the level of a due process violation given the specific circumstances of this case. A confluence of reasons led to the delay, and the district court erred in attributing the delay to the Government and consequently finding a due process violation.

The civil commitment process clearly impacts an individual's due process rights: "Because an adverse outcome in a commitment hearing results in a massive curtailment of a person's liberty," whether the respondent is already a prisoner or not, the Supreme Court has held that "due process . . . affords respondents in [civil commitment] proceedings several procedural protections." *United States v. Baker*, 45 F.3d 837, 843 (4th Cir. 1995) (internal citations omitted) (discussing due process in the context of § 4246 civil commitment); *see also Addington*, 441 U.S. at 425 ("[The Supreme] Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.").

"Once it is determined that due process applies, the question remains what process is due." *Morrissey*, 408 U.S. at 481. Because "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner," *Mathews*, 424 U.S. at 334 (citations omitted), we must determine whether Timms received adequate due process.

In *Mathews*, the Supreme Court set forth the salient factors to balance when determining whether the procedures set forth in a statute provide adequate protection against erroneous or unnecessary deprivation of an individual's due process rights. We begin with those *Mathews* factors:

> [F]irst, the private interest that will be affected by
> the official action; second, the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.* at 335. As we previously recognized, the Supreme Court has

slightly reformulated these factors for use in assessing the permissibility of post-deprivation process delay:

In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

[*FDIC v. Mallen*, 486 U.S. 230, 242 (1988).] Presumably, this refinement was undertaken out of recognition of the awkwardness of a literal application of the *Mathews* factors in this context. Where the question is not whether there will be post-deprivation review, but the timeliness of such review, it is not meaningful to inquire, as it is in the typical procedural due process context, whether the procedure sought—sooner review—would reduce the likelihood of an erroneous deprivation. The deprivation has already occurred, it is understood that there will be judicial review, and the depriva-

tion, even if in error, cannot be "undone" by sooner judicial review. . . .

*Jordan by Jordan v. Jackson*, 15 F.3d 333, 345 (4th Cir. 1994). This framework "evaluate[s] the sufficiency of particular procedures," while also avoiding the establishment of rigid rules due to the recognition that "the requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands." *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (quoting *Morrissey*, 408 U.S. at 481, and citing *Mathews*, 424 U.S. at 335). We apply the recalibrated *Mathews* analysis from *Mallen* here to resolve the issue before us.

Without question, Timms possesses a substantial "private interest" affected by certification under § 4248, i.e., his interest in liberty and freedom from physical restraint. However, the statute contemplates that there may be some period of detention between when a BOP inmate would normally have been released and the § 4248 commitment hearing because it states that certification "shall stay the release of the person pending completion of procedures contained in this section," § 4248(a). The statute also places no express outer limit on how long that stay may remain in force or when the court must conduct the commitment hearing. During that period of time, however short or long it may be, an individual's liberty is restrained; thus, the statute implicates a substantial interest. *See Goetz v. Crosson*, 41 F.3d 800, 803 (2d Cir. 1994) ("As to the first [*Mathews*] factor, the patient has a liberty interest implicated by the procedures used [during the civil commitment proceeding]. Involuntary commitment to a psychiatric facility is obviously a significant restriction on an individual's liberty.") (internal citations omitted). The private liberty interest factor clearly weighs in Timms' favor.

The second *Mathews* factor, "the risk of erroneous deprivation," was refined in *Mallen* to be "the likelihood that the interim decision may have been mistaken." *Jordan*, 15 F.3d

at 345. That factor also weighs in Timms' favor. Section 4248 permits certification upon an order signed by one individual, the Attorney General, the Director of the BOP, or their designee. § 4248(a). No specific steps are required prior to certifying someone, other than that signatory's determination that the person meets the criteria for being "sexually dangerous" under § 4247(a)(5). There is no pre-certification hearing or other initial adversarial review. Indeed, the risk of improper certification is apparent from the parties' representation that of the approximately 130 individuals certified under § 4248, the Government subsequently dismissed almost two dozen certifications because it subsequently determined the individual did not satisfy the criteria. We note, however, that this risk will likely be mitigated in the future given the Government's concession at oral argument that it will not, in the ordinary course, oppose initial requests for "probable cause" hearings. *See, e.g.*, *United States v. Shields*, 522 F. Supp. 2d 317, 336 (D. Mass. 2007) ("The government concedes that, to avoid constitutional doubts, this Court has the authority to interpret [§ 4248] to require a probable cause hearing within a specified period of time."); *see also Kansas v. Hendricks*, 521 U.S. 346, 352 (1997) (noting that, under the Kansas Sexually Violent Predator Act, a court had to make a preliminary determination about whether "probable cause" existed that the person was a "sexually violent predator").

It is on the last inquiry, the Government's interest and the "justification offered by the Government for delay," that Timms' challenge ultimately fails. *Cf. Mallen*, 486 U.S. at 242. Significantly, due process "is not a technical conception with a fixed content unrelated to time, places and circumstances," it is "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quotations marks and citations omitted). The chronology of events leading up to Timms' § 4248 hearing reflects "the justification offered by the Government for delay" satisfies the requirements of due process in this case.

The Government certified Timms on October 23, 2008, representing at that time that Timms is a "sexually dangerous person," and requesting the district court "to hold a hearing to determine whether" Timms could be committed under § 4248. *See* § 4248(a). For at least the initial 19 days after certification, Timms would have been held in BOP custody in any event to complete his criminal sentence of incarceration. Consequently, any procedural due process concern arose no earlier than November 11, 2008, the day on which Timms would have likely been released from incarceration absent the § 4248 certification.

However, on October 28, 2008, the district court — *sua sponte* — placed Timms' commitment action in abeyance pending *Comstock*. Timms, significantly, never objected to the abeyance in this proceeding.[13] In fact, his duly appointed counsel consented to it. We do not mean to suggest that Timms was not diligent in seeking judicial review at all, as he clearly pursued a separate track for relief in his habeas petition. However, he never alerted the district court in the pertinent forum, this commitment action, that he objected to its decision to place his commitment action in abeyance. The fact remains that Timms' commitment action remained in abeyance for approximately 26 months without Timms ever requesting a hearing or asking the district court to reconsider its decision to place his case in abeyance. This was so even when it became clear that the abeyance would be lengthy and after the district court issued the standing order stating that individual respondents who wished to proceed with their commitment hearings, despite the ongoing appellate review of the constitutionality of the statute, could move for such a hearing to take place in their commitment actions.

---

[13]Indeed, even though he filed a writ of habeas corpus and repeatedly requested a commitment hearing in conjunction with that proceeding, because he filed the writ prior to the district court placing the commitment action in abeyance, even that proceeding cannot fairly be considered an "objection" to what the court did in this action.

Consequently, the Government simply cannot be held responsible for the time period during which Timms' case remained in abeyance throughout the lengthy appellate proceedings in *Comstock*. This is so particularly in light of the apparent and actual acquiescence of Timms' court-appointed counsel in the commitment action to the continued abeyance. Nor can the Government be faulted for agreeing to the abeyance in light of the heavy cost of pursuing hearings on the merits when § 4248 proceedings remained under a cloud of constitutional uncertainty. There is simply no basis for the validity of the argument that the Government should have, at its own initiative, pressed for a commitment hearing under these circumstances.

The district court thus improperly held the Government responsible for "delivering [Timms] into a legal setting" where there would be substantial delays by certifying him under § 4248. (J.A. 45.) The district court cited no authority, nor can we find any, for requiring the Government to avoid actions it is lawfully permitted to take simply because the process may stall later due to the actions of others. As long as appellate review of the facial constitutionality of § 4248 remained ongoing, the Government was within its authority to continue certifying individuals pursuant to the statute. Similarly, just because the Government may have had additional avenues for certifying some individuals under other federal statutes does not mean that it was prohibited from certifying individuals under § 4248 until the constitutionality of the statute was resolved.[14]

---

[14]Timms and the district court both point to the timing of the Government's certification in proximity to Timms' anticipated release from BOP incarceration as a contributing factor to the delay in Timms receiving a hearing. While it is true that the Government waited until just under three weeks before Timms' expected release to certify him, an earlier certification would have made no difference in this particular case. The delay in holding his § 4248 hearing occurred as a direct result of the relative newness of § 4248 and the ongoing judicial review of the statute's constitu-

Furthermore, we find no due process violation arising from the period between the end of the appellate proceedings in *Comstock* in the summer of 2010 and Timms' evidentiary hearing on May 25, 2011. First, Timms did not move for a hearing in the commitment action until February 8, 2011.[15] After Timms finally did request a hearing in the proper forum, due process required that he receive a hearing within a reasonable period of time. Timms received a hearing less than four months after his request (a February 8 request and May 25 hearing). Under the specific circumstances presented in this case, this delay did not constitute a due process violation.[16] In the wake of the appellate rulings upholding the constitutionality of § 4248, the district court made reasonable efforts to schedule hearings in the numerous pending § 4248 cases and

tionality. An earlier certification in Timms' case would not have led to an earlier resolution of those issues in *Comstock*.

In spite of the fact that this argument lacks force in Timms' particular circumstance, we note that it may have greater traction in a future case. According to the parties' representations, § 4248 certifications continue to, in particular circumstances, take place mere days before an individual's expected release date from criminal incarceration. Now that § 4248's constitutionality has been resolved and the backlog of commitment hearings are working their way through the judicial system, the Government must strive to certify individuals in sufficient time to minimize the delay between an anticipated release date and the § 4248 hearing. And although this is not such a case, it may be that a substantial and unjustified delay between those periods could be appropriately attributed to the Government such that it constitutes a due process violation in a future case. We thus reiterate here the admonition and concern expressed in *Broncheau* that we "trust that the proceedings on remand will move forward with dispatch and not further exacerbate the grim delay in achieving resolution of these matters," both in this case and in the other pending § 4248 certifications. 645 F.3d at 687 n.10; *see also id.* at 687-89 (Wynn, J., concurring).

[15]Although Timms, acting pro se, moved for a hearing in January 2011, he was represented by counsel at the time, and the district court denied the motion for that reason. Timms, through counsel, did not request a hearing until February 8, 2011.

[16]We express no view on whether this delay would be constitutionally acceptable in future § 4248 cases.

to ensure that the parties involved in those hearings would have adequate time to prepare their evidence, including the testimony of expert witnesses. In the context of this case, such delay does not give rise to a due process violation.

   In sum, contrary to the district court's conclusion, the Government's lawful exercise of its authority under § 4248 is not to blame for the delay in Timms' certification action and did not deny him due process. Our decision rests on the unique factors that exist in this case, including a new statute with debatable constitutionality; a properly filed Government certification followed by the district court's *sua sponte* placement of the case in abeyance; Timms' failure to request a hearing earlier in this action; an unusually lengthy appellate resolution of the constitutionality of the statute; the burdens associated with the consolidation of § 4248 commitment actions into one judicial district; and the time necessary to prepare for a § 4248 commitment hearing. As the Supreme Court has recognized, "even though there is a point at which an unjustified delay in completing a post-deprivation proceeding would become a constitutional violation, the significance of such a delay cannot be evaluated in a vacuum." *Mallen*, 486 U.S. at 242 (internal quotation marks and citation omitted).[17] For

---

[17]The district court applied the *Mathews* analysis, and since that is how the parties framed their arguments, that is the analysis we have focused on in reviewing the issue. There is some support for the Supreme Court's alternative analysis from *Barker v. Wingo*, 407 U.S. 514 (1972), to apply here. We need not resolve which test is most appropriate because under either, the Government prevails. *Barker* addressed whether a procedural delay violated a defendant's right to a speedy trial under the Sixth Amendment. *Id.* at 515. However, we previously applied it to determining whether an undue delay occurred in the context of a Fifth Amendment due process challenge, albeit still in a criminal proceeding. *See United States v. Johnson*, 732 F.2d 379 (4th Cir. 1984).

   The *Barker* factors are "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 381-82 (quoting *Barker*, 407 U.S. at 530). At most, the length of the delay would weigh in Timms' favor. As already noted, Timms did assert his

these reasons, we hold that the district court erred in finding a due process violation as applied to Timms.[18, 19]

## C.   Characterization of § 4248 as a Civil Statute

On cross-appeal, Timms asserts that the district court erred in holding that § 4248 is a civil, rather than criminal statute

---

rights, but he did so in the wrong forum, his habeas action. Accordingly, that factor is at best neutral. Once again, the reason for the delay here is justified in light of the unique circumstances of this case and cannot be attributed to the Government. Lastly, it is not yet clear whether Timms has suffered any prejudice as a result of the delay because the district court still has not determined whether he satisfies the criteria for commitment under § 4248. For these reasons, we conclude that even if the *Barker* test applied to Timms' situation, it would not yield a different result.

[18]As noted *supra* n. 12, our disposition of the as-applied challenge to § 4248 means that Timms' facial challenge fails as well.

[19]We also note that even if Timms' case constituted a due process violation, the proper remedy would not be release, but to conduct the hearing and adjudicate whether he is a "sexually dangerous person" under the statute. Moreover, we further observe that when Timms finally received the certification hearing, the district court prolonged the proceedings by ruling only on the constitutional issues without addressing the merits of the certification. In *Johnson*, we held even though a two-year delay in processing the defendant's appeal "may well have violated due process," "there is not any sound reason to order defendant's release" because the hearing had been conducted and the appeal had been heard. 732 F.2d at 382-83 (citing favorably out-of-circuit cases holding the same); *see also United States v. Magassouba*, 544 F.3d 387, 411 (2d Cir. 2008) ("In *Jackson v. Indiana*, 406 U.S. [715, 738 (1972)], the Supreme Court identified a due process denial in the more-than-three-year detention of an incompetent defendant without a substantial probability finding. Nevertheless, the Court did not order dismissal of the charges. Rather, it remanded the case to the state courts for them to decide, in the first instance, whether there was a substantial probability that Jackson could be restored to competency within a reasonable time and, if so, to ensure that his continued commitment was justified by progress toward that goal."). Similarly, here, the proper remedy would not be dismissal of the certification and release, but conducting the hearing and determining on the merits whether Timms should be committed as a "sexually dangerous person" under § 4248(a).

and that consequently, the statute is unconstitutional on the additional grounds that it fails to adequately protect various rights afforded to criminal defendants. Timms first submits that *Comstock II* expressly declined to consider this issue because the respondents failed to preserve the argument, so the issue should be reviewed as one of first impression. Timms further contends that the Court must look beyond Congress' stated civil purpose because § 4248 is so punitive in its effect that it imposes a criminal penalty. Specifically, Timms points to § 4248's failure to "sufficiently distinguish the conditions of confinement of its detainees from those of federal prisoners" and its omission of specific therapeutic responsibilities as factors that distinguish it from state civil commitment statutes that the courts have recognized as civil in nature. (Response Br. 40.) And Timms argues that because § 4248 should be regarded as a criminal statute, numerous constitutional protections (such as *Ex Post Facto* and Double Jeopardy) must be provided to individuals held pursuant to it.

We are not persuaded by Timms' argument. He correctly observes that the respondents in *Comstock II* "failed to pre-serve [the] argument" "that § 4248 constitutes criminal, not civil, proceedings." 627 F.3d at 518 n.1 (internal quotation marks omitted). However, while this argument was not expressly before us, our belief that § 4248 is a civil statute necessarily informed our analysis of whether proof of past conduct by "clear and convincing evidence" rather than by "proof beyond a reasonable doubt" (a standard traditionally reserved for criminal statutes) passed constitutional muster. In *Comstock II* we analyzed Supreme Court precedent that drew a clear line between the burden of proof required in criminal cases and the burden of proof sufficient "to justify civil com-mitment of mentally ill persons." *Id.* at 519. We noted "that the purpose and structure of the [civil] commitment process render it unlike any criminal prosecution" because "in a civil commitment proceeding, 'state power is not exercised in a punitive sense.'" *Id.* at 520-21 (quoting *Addington*, 441 U.S. at 428); *see also id.* at 522-24. And we observed that the

Supreme Court has repeatedly and "specifically reiterated that the *civil* nature of a civil commitment proceeding warrants application of the clear and convincing standard." *Id.* at 524 (citing *Heller*, 509 U.S. 312).[20] We thus affirm the district court's conclusion that § 4248 "creates civil—not criminal—proceedings," and that Timms' arguments relying on § 4248 being a criminal proceeding therefore fail.

## III.

For the foregoing reasons, we reverse the district court's judgment dismissing the Government's § 4248 commitment action against Timms. The district court did not err in concluding that § 4248 is a civil statute and thus is not subject to the various constitutional safeguards placed on criminal proceedings. Nor did it err in relying on this Court's precedent that § 4248's requirement that proof of past conduct by "clear and convincing evidence" rather than "beyond a reasonable doubt" is appropriate. Circuit precedent also forecloses Timms' argument that § 4248 cannot be invoked because his criminal sentence includes post-incarceration supervised release. However, the district court erred in finding that, as applied to Timms, § 4248 deprived him of equal protection and due process of law. The case is remanded for the district

---

[20]The clear implications of this analysis in *Comstock II* led Judge Wynn, in his concurring opinion in *United States v. Broncheau*, to subsequently observe that the procedural due process concern that "the argument that § 4248 proceedings, although nominally civil, were actually criminal" "was foreclosed when, in *Comstock II*, we reiterated that § 4248 is in fact a civil commitment statute." 645 F.3d at 689 n.* (Wynn, J., concurring) (citing *Comstock II*, 627 F.3d at 520). Furthermore, *Comstock II*'s characterization of § 4248 as a civil statute is clearly correct. In determining whether a statute establishes criminal or civil proceedings, courts should look beyond the legislature's "civil label" only upon "the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (internal citation and alterations omitted). Here, Timms has put forward no evidence that would cause us to reject Congress' "manifest intent" to create a civil commitment scheme. *See id.*

court to determine on the merits whether Timms meets the § 4248 criteria for being declared a "sexually dangerous person."

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*