*200 DAVIS, Senior Circuit Judge,
concurring in the judgment:
This is a close case. Ultimately, I vote to affirm because evidence of Cooke’s recent history and his own testimony meaningfully contribute to the satisfaction of the Government’s burden to establish by clear and convincing evidence that he still suffers from a volitional impairment that makes his likelihood of reoffending higher than that of the typical recidivist. His case is therefore distinguishable from United States v. Antone, 742 F.3d 151 (4th Cir.2014), in which we held that the district court’s finding regarding volitional impairment was not supported by clear and convincing evidence because, among other reasons, it ignored the offender’s recent history while assigning determinative weight to the existence of his prior offenses.
This case, and these cases generally, are evaluated through three prisms. First, the Adam Walsh Act is designed to target individuals who are different from the rest of the offender population. The policy choices Congress has made is rooted in the perception that there are unique mental health issues associated with these sexual offenders that create a much higher likelihood of recidivism. Antone, 742 F.3d at 159; United States v. Timms, 664 F.3d 436, 449 (4th Cir.2012) (holding that Congress’ rational interest was to protect the public from “reasonably foreseeable harm” by ex-convicts). Cf. Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). Second, the evidentiary standard in these cases is “exacting”: there must be clear and convincing evidence that an individual is so impaired that he is likely to commit a future sexual offense. Antone, 742 F.3d at 159. And third, this standard is a tough one to meet — and the burden is on the Government to meet it.
It is important that an appellate court’s reasoning take care not to shift the burden to an offender to show that he will not offend again; over-reliance on an offender’s pre-incarceration history poses that risk. For example, the majority concedes that it is “difficult to say with certainty whether Cooke was able to control his own behavior, or whether the prison environment controlled it for him.” Maj. op. at 199. But the point of the Walsh Act inquiry is to put in place a standard that the Government must meet with a relatively precise degree of certainty, i.e., a certainty tested by the exacting clear and convincing evidentiary standard. Similarly, the majority approvingly cites the district court’s observation “that Cooke has a long history of child molestation that, in itself, demonstrates occasions on which Cooke was controlled by his illness, and with tragic results.” Maj. op. at 198. But our case law forsakes this myopic focus on the past, instead highlighting that recent behavior is also a particularly probative data point in these cases. Antone, 742 F.3d at 166.
Despite my concerns about the majority’s approach, I agree with its ultimate conclusion because, unlike in Antone, Cooke’s recent history strongly suggests that he suffers from a current volitional impairment. Most importantly, the district court’s assessment of Cooke’s testimony revealed that he was simply not a credible witness: (1) his plans for obtaining treatment were not credible; (2) his claimed willingness to take responsibility for his prior conduct was not credible; and (3) his purported understanding of the nature of his illness was not credible. At least one expert testified that his behavior was demonstrative of an untreated sex offender. These credibility determinations, combined with the lack of a concrete post-release treatment plan and the record evidence that his interest in young and trou *201 bled boys had endured, were — in the light of the totality of the factual record — sufficient for the district court find that Cooke currently suffers from a volitional impairment and would likely reoffend if not committed for treatment. The district court was amply justified in rejecting Cooke’s assertion (only implied, to be sure) that if he were to reoffend upon release, it would be because he chose to reoffend and not because he lacked the volitional control needed to avoid doing so.
I concur in the judgment.