**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-7653

UNITED STATES OF AMERICA,

                    Petitioner - Appellee,

          v.

VERNON DALE WOOD,

                    Respondent - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  W. Earl Britt, Senior District Judge.  (5:12-hc-02008-BR-JG)

Argued:  October 30, 2013          Decided:  December 20, 2013

Before SHEDD and THACKER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion.  Senior Judge Hamilton wrote the opinion in which Judge Shedd and Judge Thacker joined.

**ARGUED**: James Edward Todd, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenville, North Carolina, for Appellant.  Michael Gordon James, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF**: Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Thomas G. Walker, United States Attorney, Rudy A. Renfer, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina,

for Appellee.

---

HAMILTON, Senior Circuit Judge:

Below, following a hearing, the district court found that Vernon Dale Wood (Wood) was a "sexually dangerous person" under the Adam Walsh Act, 18 U.S.C. § 4248 (the Act). As a result, the district court committed Wood to the custody of the Attorney General of the United States. Wood appeals, and we affirm.

I

A

The Act provides for the civil commitment of a "sexually dangerous person" following the expiration of their federal prison sentences. Id. § 4248(a). A sexually dangerous person is one "who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." Id. § 4247(a)(5). A person is considered "sexually dangerous to others" if "the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." Id. § 4247(a)(6).

The Attorney General, his designee, or the Director of the Federal Bureau of Prisons (BOP) may initiate a § 4248 civil commitment proceeding in the district court for the district in which the person is confined by filing a certification that the

- 3 -

person is sexually dangerous within the meaning of the Act.  Id. § 4248(a).  The filing automatically stays the release of the person from custody pending a hearing before the district court. Id.

Prior to the civil commitment hearing, the district court "may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court."  Id. § 4248(b). If the district court finds more than one examiner "appropriate," the district court may order additional examinations.  Id. § 4247(b).  Each examiner is designated by the district court, "except . . . upon the request of the defendant[,] an additional examiner may be selected by the defendant."  Id.

To obtain a civil commitment order against a defendant, the government is required to establish three elements by clear and convincing evidence.  Cf. id. § 4248(d) ("If, after the hearing, the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General.").  First, the government is required to establish that the defendant has "engaged or attempted to engage in . . . child molestation" in the past, id. § 4247(a)(5).  Next, the government is required to prove that the defendant currently "suffers from a serious

- 4 -

mental illness, abnormality, or disorder," id. § 4247(a)(6). Finally, the government is required to show that the defendant, as a result of the illness, abnormality, or disorder, "would have serious difficulty in refraining from . . . child molestation if released."  Id.

B

Wood was born in July 1953.  In 1976, he was arrested for promoting prostitution in the first and second degree, and simple assault, in Yakima County Superior Court in Yakima, Washington.    The  prostitution  charges  were  subsequently dismissed, but Wood was convicted of the simple assault charge and received a suspended sentence of fifteen days.

In April 1977, Wood was arrested for promoting prostitution and compelling prostitution in Malheur County Circuit Court in Malheur, Oregon.  He was found guilty of both counts and sentenced to eighteen months' imprisonment for the promoting prostitution count and sentenced to a consecutive term of three years' imprisonment for the compelling prostitution count.  One of the women involved in these prostitution offenses was a sixteen-year old female.

In August 1987, Wood was charged with sexual abuse in the second degree in Polk County District Court in Polk, Iowa.  In May 1989, he was found guilty of this offense, which involved intercourse with a ten-year old girl, and sentenced to twenty-

- 5 -

five years' imprisonment. He was released from prison in January 2001.

On April 16, 2001, Wood was arrested and charged with failure to comply with sex offender registry requirements in Polk County District Court. He received a suspended sentence of two years' imprisonment and placed on probation.

Wood's probation was revoked, and the two-year sentence was reinstated, following his arrest in March 2002 in Wayne County, Iowa on five counts of supplying alcohol to minors. He pleaded guilty to one such count and was sentenced to time served (twenty-four hours) plus a $250 fine.

On May 3, 2004, Wood was arrested and charged in Decatur County, Iowa with lascivious acts with a child and being a felon in possession of a firearm. These charges were not pursued because the State of Iowa deferred to the United States Attorney's Office for prosecution. Following the dismissal of the state charges, Wood was indicted on October 13, 2004 by a federal grand jury sitting in the Southern District of Iowa and charged with two counts of being a felon in possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1).

In February 2005, Wood was charged with seven counts of sexual abuse in the second degree in Decatur County District Court. These counts arose after Wood allegedly molested a female under the age of twelve over a period of three years.

These charges were ultimately dismissed in lieu of the federal prosecution.

On May 9, 2006, Wood was convicted of the federal charges of being a felon in possession of a firearm under § 922(g)(1). In preparation for sentencing, a presentence report (the 2006 PSR) was prepared. The 2006 PSR describes in detail Wood's criminal history, including the circumstances surrounding his conviction for sexual abuse in the second degree in May 1989 and his conviction for supplying alcohol to a minor in March 2002. The 2006 PSR also describes the circumstances surrounding the February 2005 Iowa state charges for sexual abuse in the second degree. Following a sentencing hearing, Wood received concurrent 100-month sentences on the two § 922(g)(1) counts.[1]

Wood's projected release date from prison (with good-time credits factored) was August 13, 2012. On January 9, 2012, the BOP certified that Wood was a "sexually dangerous person" pursuant to § 4248(a), automatically staying his release pending an evidentiary hearing. According to the certification, based on Wood's prior criminal history and psychological assessments

_____

[1] Wood has been convicted in a variety of state courts of numerous non-sexual offenses, including larceny/shoplifting, interference with a police officer, malicious mischief, simple assault, second degree assault with a deadly weapon, driving while under the influence, driving without a valid license, second degree escape, resisting arrest, and harassment.

of him, he would have serious difficulty refraining from sexually violent conduct or child molestation if released.

On January 23, 2012, the district court appointed Dr. Harry Hoberman (Dr. Hoberman), a licensed psychologist, as the district court's designated examiner, pursuant to § 4247(b) and Standing Order of the Court No. 11-SO-4 (the Standing Order). The Standing Order, which governed all cases arising under the Act, was issued by the Chief Judge of the United States District Court for the Eastern District of North Carolina on November 14, 2011.[2] Paragraph 5(h) of the Standing Order addresses the appointment of the two types of examiners identified in § 4247(b), a "court-selected examiner" (under Paragraph 5(b) of the Standing Order) and an "additional examiner" selected by the defendant (under Paragraph 5(c) of the Standing Order). (J.A. 17, 18). Paragraph 5(h) of the Standing Order bars counsel from either party from communicating

> in writing, orally, or in any other manner with the examiner about the substance of the examiner's examination of the respondent, the report on the examination, or other matters relating to the merits of the proceeding against the respondent except during questioning at a deposition or hearing without leave of court.

---

[2] The Standing Order replaced an earlier standing order issued on August 4, 2010. Recently, the Standing Order was replaced by a standing order issued on October 21, 2013.

(J.A. 20).[3]

Additionally, Paragraph 5(d) of the Standing Order establishes the procedures governing how a defendant may obtain a "non-testifying examiner" pursuant to Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure. (J.A. 18). In particular, the Standing Order states:

> **Non-testifying Examiner Retained by the Respondent.**
> The respondent may without undue delay move, ex parte and under seal, if he chooses, for approval for an expert he has retained pursuant to Fed. R. Civ. P. 26(b)(4)(D) to conduct an examination of him. Any such motion shall include a certification that the expert has agreed to perform the examination and the proposed date for it, and the expert's curriculum vitae or comparable documentation demonstrating the expert's qualifications and providing contact information for the expert. The motion shall be supported by a memorandum showing that the examination is needed in light of any examinations of the respondent already ordered or completed and that the additional examination would not unduly delay the commitment hearing. Examiners retained pursuant to Fed. R. Civ. P. 26(b)(4)(D) and examinations and reports by them are not subject to the provisions of subparagraphs (b), (c), (e), (f), (g), or (h), which apply to examiners appointed pursuant to 18 U.S.C. § 4247(b) and examinations and reports by them.

(J.A. 18-19).[4]

---

[3] Paragraph 5(h) of the Standing Order does permit non-substantive ex parte communications, such as communications involving scheduling, the service of documents, and the payment of fees.

[4] Of note, Wood never sought the appointment of an additional examiner under Rule 26(b)(4)(D).

On February 8, 2012, Wood filed a motion seeking the appointment of Dr. Fabian Saleh (Dr. Saleh) as an additional examiner as provided in § 4247(b) and § 4248(b). On February 14, 2012, the district court granted Wood's motion.

On July 6, 2012, Wood filed a motion seeking clarification of Paragraph 5(h) of the Standing Order or, in the alternative, seeking leave to substantively communicate ex parte with Dr. Saleh. A United States Magistrate denied Wood's request to substantively communicate ex parte on the basis that Paragraph 5(h) prohibited such communications without leave of court and Wood failed to show "circumstances justifying overriding" the dictates of Paragraph 5(h). Consequently, although the magistrate judge permitted Wood to discuss substantive matters concerning the commitment hearing with Dr. Saleh, such discussions were required to be in the presence of counsel for the government.

Wood appealed this ruling to the district court, contending that the magistrate judge's ruling deprived him of his due process rights. In particular, Wood contended that he had a right to have an expert examine him, testify on his behalf, and consult with his attorney. The district court affirmed the magistrate judge's ruling, concluding that the magistrate judge correctly interpreted the Standing Order and that the Standing Order was consistent with the Act.

On July 30, 2012, the district court held a civil commitment hearing. Wood conceded the first prong under the Act, which called for the government to prove by clear and convincing evidence that Wood had previously engaged in or attempted to engage in sexually violent acts or child molestation. At the hearing, Dr. Tanya Cunic (Dr. Cunic), Dr. Hoberman, Dr. Saleh, and Eva Toney, Wood's sister, testified.[5]

Dr. Cunic testified that she was a forensic psychologist at FCC Butner in Butner, North Carolina. Dr. Cunic performed a forensic evaluation of Wood. Dr. Cunic performed her evaluation pursuant to a referral from the Sex Offender Certification Review Branch. Dr. Cunic testified that Wood did not submit to a clinical interview and she performed a record review.

Dr. Cunic testified that she diagnosed Wood with two serious mental disorders: (1) Pedophilia, Sexually Attracted to Females, Non-Exclusive Type, based on Wood's history and pattern of offending; and (2) Personality Disorder, Not Otherwise Specified with Antisocial Traits, based on Wood's history of volatile interpersonal relationships, assaults, unstable employment, and frequent contacts with law enforcement. Dr. Cunic further testified that, based on Wood's serious mental

---

[5] Of note, Wood did not testify.

disorders and dynamic risk factors, he would have serious difficulty in refraining from child molestation.

Dr. Hoberman testified that he diagnosed Wood with two serious mental disorders: (1) Pedophilia, Sexually Attracted to Females; and (2) Antisocial Personality Disorder. Dr. Hoberman also testified that he believed that Wood would have serious difficulty in refraining from future acts of child molestation if released, based on Wood's serious mental disorders, admissions during psychological testing, and a risk assessment Dr. Hoberman performed.

Dr. Saleh testified that there was no evidence that Wood suffered from Pedophilia. Likewise, Dr. Saleh testified that Wood did not suffer from Antisocial Personality Disorder. Dr. Saleh testified that he did diagnose Wood with Personality Disorder Not Otherwise Specified but that there was no link in Wood's case between the disorder and sexual reoffending. Dr. Saleh further testified that, if the district court found Wood suffered from a serious mental disorder, he believed Wood would not have serious difficulty in refraining from engaging in child molestation.

On September 6, 2012, the district court issued its civil commitment order. The district court first summarized Wood's offense history. The district court then turned to the three elements required for civil commitment under the Act. With

regard to the first element, the district court found that the government had proved that Wood had previously engaged in child molestation based on Wood's 1989 conviction for sexual abuse in the second degree.

With regard to the second element, the district court found that Wood suffered from Pedophilia, a serious mental disorder. The district court credited the opinions of Drs. Cunic and Hoberman over the opinion of Dr. Saleh. The district court held that it did not ascribe much weight to the uncharged sexual misconduct. The district court found, however, that when combined with the 2004 charge, the uncharged sexual misconduct was entitled to significant weight. The district court arrived at this conclusion after it credited Drs. Hoberman's and Cunic's explanation of its relevance.

The district court also found that Wood suffered from another serious mental disorder, that is, Personality Disorder, Not Otherwise Specified with Antisocial Traits. According to the district court, this finding was supported by the psychological testing performed by Dr. Hoberman. The district court further noted that Wood

> has failed to conform to social norms with respect to lawful behaviors as evidenced by his extensive non-sexual criminal history. [Wood] has acted impulsively in the past and has also demonstrated aggressiveness, as indicated by his multiple convictions for assault. . . . [Wood] has continued his irresponsible behavior while in federal custody, incurring various

disciplinary infractions for conduct such a fighting with another person in 2008, and making, possessing, or using intoxicants on more than one occasion in 2009.

(J.A. 350-51) (footnote omitted).

With regard to the third element, the district court found that Wood would have serious difficulty in refraining from child molestation if released. In so finding, the district court credited the opinions of Drs. Cunic and Hoberman over the opinion of Dr. Saleh.

II

Wood argues that the Standing Order violates his due process rights. "We review the district court's ruling on a constitutional challenge to a federal statute de novo." United States v. Timms, 664 F.3d 436, 444 (4th Cir. 2012).

The gist of Wood's argument is that the Standing Order is fundamentally unfair because it prohibits him from having substantive ex parte communications with his selected ("additional") examiner, Dr. Saleh. In Wood's view, such a prohibition is inherently unfair because the government is not prevented from having substantive ex parte communications with its BOP experts. To ensure fundamental fairness, Wood insists that he is entitled to have substantive ex parte communications with his selected examiner.

In response, the government contends that Wood received a fair hearing and, therefore, his due process rights were not infringed. The government points out that the Standing Order permits representation by counsel, and allows a defendant to testify at the hearing, present evidence, subpoena witnesses, and confront and cross-examine witnesses. The government further points out that the Standing Order permits the defendant to move, pursuant to Rule 26(b)(4)(D), for a non-testifying examiner, who can examine the defendant and discuss <u>ex parte</u> the strengths and weaknesses of the defendant's case with counsel, thereby assisting the defendant in developing his defense. Finally, the government points out the Standing Order "ensure[s] that the district court as the fact-finder receives only unvarnished and neutral information" from the testifying experts. Appellee's Br. at 20.

Although a civil commitment hearing is civil in nature, <u>Addington v. Texas</u>, 441 U.S. 418, 428 (1979), a negative outcome in such a proceeding results in a "massive curtailment of liberty," <u>Vitek v. Jones</u>, 445 U.S. 480, 491 (1980) (citation and internal quotation marks omitted), such that procedural due process does guarantee certain protections to defendants in civil commitment proceedings. <u>Id.</u> at 491-94. As we noted in <u>United States v. Baker</u>,

the constitutional rights to which a defendant in a criminal trial is entitled do not adhere to a respondent in a commitment hearing. Nonetheless, because an adverse result in a commitment hearing results in a substantial curtailing of the respondent's liberty (whether the respondent is already a prisoner or not), . . . the Supreme Court has held that procedural due process does guarantee certain protections to civil commitment respondents.

45 F.3d 837, 842-43 (4th Cir. 1995).[6]

We also noted in Baker that the Supreme Court in Vitek outlined the following minimum safeguards to which due process guarantees a defendant in a civil commitment proceeding:

[A] hearing at which evidence is presented and the respondent is provided a chance to be heard and to present documentary evidence as well as witnesses; the right to confront and to cross-examine government witnesses at the hearing, except upon a showing of good cause; an independent decisionmaker; a written, reasoned decision; the availability of an independent advisor, not necessarily an attorney; and effective and timely notice of the pendency of the hearing and of all these rights.

Id. at 843.

In our case, the Standing Order unquestionably complies with the minimum safeguards required by due process. Under the Standing Order, Wood was provided a hearing at which the government was required to produce clear and convincing evidence to support the civil commitment. Wood was provided counsel and

---

[6] In addition, Congress, by statute, has expressly provided for certain protections. See 18 U.S.C. § 4247(d) (providing the defendant with representation by counsel, and an opportunity to testify, to present evidence, to subpoena witnesses, and to confront and cross-examine witnesses who appear at the hearing).

adequate notice, and he was given an opportunity to present evidence in support of his case and to present witnesses. Wood also was provided an opportunity to confront and cross-examine the government's witnesses. The district court was an independent decisionmaker and provided a written, reasoned decision.

Wood's major complaint is that he lacks the blocks to build an adequate defense. See Appellant's Br. at 39 (citing Ake v. Oklahoma, 470 U.S. 68, 77 (1985) (noting that "a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense")). In particular, he claims that the Standing Order neither provides pretrial access to an expert, nor allows such an expert to testify at the hearing.

Wood's claims ring hollow for several reasons. First, the Standing Order does allow pretrial access to an expert. Under the Standing Order, a defendant, pursuant to Rule 26(b)(4)(D), can move the district court to retain a non-testifying expert, who can examine the defendant and consult with counsel.[7] For

---

[7] The standing order issued on October 21, 2013, which now governs in the Eastern District of North Carolina, allows a defendant to designate as a testifying expert witness an examiner initially retained as a non-testifying examiner
(Continued)

- 17 -

reasons unclear from the record, Wood declined to seek such assistance. Second, Wood was permitted to select Dr. Saleh, who testified at the hearing. Dr. Saleh's expert opinions supported Wood's claim that he was not a sexually dangerous person. Third, due process does not require that the defendant's pretrial expert be the same person as the defendant's testifying expert, as Wood suggests. Such a requirement certainly is not necessary to ensure that the civil commitment hearing is fundamentally fair. Cf. Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (citation and internal quotation marks omitted); Vitek, 445 U.S. at 500 (Powell, J., concurring in part) ("The essence of procedural due process is a fair hearing."). To be sure, although a process of having two experts designated by the defendant may appear unnecessarily complicated and burdensome where the duties easily could be filled by one expert, allowing the defendant to designate at least two experts to examine him instead of one does have the advantage of providing the defendant the views of another expert who may further assist the defendant in developing his defense. Put differently, simple

---

pursuant to Rule 26(b)(4)(D) and allows the defendant to engage in substantive ex parte communications with such expert.

logic suggests that an extra set of examination eyes helps, rather than hurts, the defendant's case.  In sum, we conclude there was no due process violation in this case.[8]

III

Wood argues that the district court abused its discretion by admitting unreliable hearsay into evidence.  "We review the district court's evidentiary rulings for abuse of discretion." United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007).

Below, the district court admitted state police reports concerning Wood's March 2002 arrest for supplying alcohol to a minor and his May 2004 arrest for lascivious acts with a child and being a felon in possession of a firearm.  The district court also admitted a 2005 Iowa Department of Human Services Child Protective Assessment Report.  This report formed the basis of the February 2005 Iowa state charges for sexual abuse in the second degree.  Wood objected to the admission of these reports, but did not object to the admission of the 2006 PSR, which sets forth the vast majority of the relevant evidence contained in the reports to which Wood objected.

---

[8] Wood also argues that the language of § 4247 provides for substantive ex parte consultation with his selected ("additional") examiner.  We have reviewed this argument and find it to be without merit.

Wood argues that the district court erred when it admitted the reports referenced above because such reports contained inadmissible hearsay, and further erred when it permitted the government's experts to testify about the contents of these reports. Wood posits that this allowed the government's experts to exceed their prescribed role as those who interpret the "'meaning of the facts.'" Appellant's Br. at 45 (quoting Addington, 441 U.S. at 429).

We find no abuse of discretion. The challenged reports were admissible under Rule 703 of the Federal Rules of Evidence, which permits an expert to testify to opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably rely on such evidence in forming their opinions. All of the experts in this case relied in part on some of the challenged reports in rendering their respective opinions. The reliability of the challenged reports was supported by the fact that these reports were used in the preparation of the 2006 PSR, which was admissible as an official document under Rule 803(8) of the Federal Rules of Evidence. See United States v. Pardee, No. 12-6839, 2013 WL 3316313, at *4 (4th Cir. July 2, 2013) (per curiam) (unpublished) (holding that, in a civil commitment proceeding, PSR is admissible as an official document under Rule 803(8)). Finally, because the district court was also the trier of facts, the district court's

evidentiary gatekeeping function was relaxed, and the district court was in the best position to decide the proper weight to give the expert opinions. See In re Salem, 465 F.3d 767, 777 (7th Cir. 2006) ("[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702."); United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."). The case below was a classic case of a battle of the experts, and the district court clearly was at liberty to choose the opinions of Drs. Cunic and Hoberman over the opinion of Dr. Saleh. See Connorton v. Harbor Towing Corp., 352 F.2d 517, 518 (4th Cir. 1965) ("An appellate court is not the proper forum to refight a battle of expert witnesses.").

In any event, any error in the admission of the challenged reports is harmless. See United States v. Clarke, 2 F.3d 81, 85 (4th Cir. 1993) (holding that the admission of cumulative testimony was harmless); Smith v. Firestone Tire & Rubber Co., 755 F.2d 129, 132 (8th Cir. 1985) ("Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error."). As noted above, the 2006 PSR was admissible as an official document before the district court

under Rule 803(8), and Wood understandably does not challenge the admissibility of the 2006 PSR before this court.  Yet, the 2006 PSR sets forth the vast majority of the relevant evidence contained in the challenged reports.  As such, the information contained in these reports merely is cumulative to other admissible evidence.

IV

For the reasons stated herein, the judgment of the district court is affirmed.

<u>AFFIRMED</u>