**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-7726

UNITED STATES OF AMERICA,

Petitioner - Appellee,

v.

THOMAS BLACKLEDGE,

Respondent - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, Chief District Judge.  (5:09-hc-02118-D)

Submitted:  December 1, 2017                     Decided:  January 8, 2018

Before GREGORY, Chief Judge, and SHEDD and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Lawrence H. Brenner, Sarah L. Greene, BRENNER & BRENNER, Carrboro, North Carolina, for Appellant.  John Stuart Bruce, United States Attorney, G. Norman Acker, III, Roberto F. Ramirez, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Thomas Blackledge appeals the district court's order finding him to be a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006 (the "Adam Walsh Act"), 18 U.S.C. §§ 4247-4248 (2012), and civilly committing him to the custody of the Attorney General.[1]  On appeal, Blackledge contends that the court clearly erred in crediting the opinions of the Government's experts.  Blackledge also complains of the court's reference to a study of elderly sex offenders relied upon by one of the experts but not admitted at trial.  Finding no reversible error, we affirm.

We review the district court's factual findings for clear error and the court's legal conclusions de novo.  *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012).  Under clear error review, a reviewing court "may not reverse a lower court's finding of fact simply because it would have decided the case differently.  Rather, a reviewing court must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed."  *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012) (brackets and internal quotation marks omitted).  Thus, as long as "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."  *Id.* (internal quotation

---

[1] We reversed the district court's previous civil commitment order after concluding that the court abused its discretion in denying Blackledge's counsel's request to withdraw from representation.  *United States v. Blackledge*, 751 F.3d 188 (4th Cir. 2014).

marks omitted). Moreover, when a district court's findings of fact are based on credibility determinations, we accord "even greater deference to the trial court's findings." *Hall*, 664 F.3d at 462 (internal quotation marks omitted). Accordingly, we are "especially reluctant to set aside a finding based on the trial court's evaluation of conflicting expert testimony." *Id.* (internal quotation marks omitted).

Under the Adam Walsh Act, an individual is subject to civil commitment if the Government establishes, by clear and convincing evidence, that he

> (1) previously engaged or attempted to engage in sexually violent conduct or child molestation (the "prior conduct" prong); (2) currently suffers from a serious mental illness, abnormality, or disorder (the "serious mental illness" prong); and (3) as a result of that mental condition, the individual would have serious difficulty in refraining from sexually violent conduct or child molestation if released (the "volitional control" prong).

*United States v. Springer*, 715 F.3d 535, 538 (4th Cir. 2013) (some internal quotation marks omitted); *see* 18 U.S.C. § 4247(a)(5), (6) (2012). Because Blackledge stipulated to the first two prongs, the only disputed issue at trial was whether the Government could satisfy the volitional control prong by clear and convincing evidence.[2]

The primary factual question below was whether Blackledge, who was 71 years old at the time of trial, was likely to reoffend given his age. Dr. Christopher North,

---

[2] As to the prior conduct prong, Blackledge was convicted of a sexually-motivated murder in 1960, as well as various child pornography offenses in 1986. In 2005, Blackledge was sentenced to six years' imprisonment for supervision violations after he admitted accessing child pornography and sending nude images of himself to underage girls. Blackledge was serving this six-year prison term at the time the Government moved to certify him as a sexually dangerous person. As to the serious mental illness prong, each expert diagnosed Blackledge with some form of pedophilic disorder, and the court concluded that clear and convincing evidence supported this diagnosis.

testifying for the Government, noted that Blackledge demonstrated a continued deviant sexual interest in children, held problematic beliefs about sexual contact with children, and showed no significant diminution in sexual functioning. Thus, although Dr. North acknowledged that recidivism rates for older offenders are very low and are likely overstated for men over the age of 70, he opined that Blackledge would pose a serious risk of reoffending.

Dr. Gary Zinik, another Government witness, estimated that 96 to 97 per cent of sex offenders over 70 do not molest a new victim. However, based on Blackledge's "life-long history of sexual preoccupation with children," "on-going sexual arousal and masturbation activity involving fantasies of children," and lack of "internal self-control and the ability to redirect himself away from his deviant sexual pursuits" (J.A. 111, 113),[3] Dr. Zinik opined that, if given the opportunity, Blackledge would have serious difficulty refraining from engaging in sexual activity with children.

Dr. Frank Wood, testifying for Blackledge, agreed with the other experts that recidivism over age 70 is very rare, and expressed his belief that, at this point in time, actuarial tools are insufficient to support predictions about recidivism for someone in Blackledge's age group. Thus, although Dr. Wood opined that there was no evidence that Blackledge would have difficulty controlling his sexual impulses if released, he further stated that any opinions supporting or opposing a finding of volitional control are scientifically indefensible.

_____

[3] Citations to "J.A." refer to the Joint Appendix filed by the parties in this appeal.

The district court credited the Government's experts over Dr. Wood, finding the analysis of Drs. North and Zinik to be "more thorough, better reasoned, better supported by the record, and better supported by independent research."[4] (J.A. 709). In addressing the age issue, the court relied on *Wooden*, in which we held that "the generally observed inverse relationship between age and recidivism does little to overcome the evidence of Wooden's continuing struggle with the child-focused fantasies, urges, and behaviors characteristic of pedophilia." 693 F.3d at 462. Accordingly, the district court determined that the Government satisfied the volitional control prong, and identified Blackledge as a sexually dangerous person.

On appeal, Blackledge argues that the district court clearly erred in failing to account for Dr. Wood's testimony about the unreliability of recidivism predictions for offenders over the age of 70. However, in citing *Wooden*, the district court demonstrated that it credited the more nuanced approach of the Government's experts, who found that Blackledge's history and continued sexual fantasies about children overcame the inverse relationship between age and recidivism, over Dr. Wood's blanket rejection of these risk factors. Blackledge also contends that the court relied too heavily on his criminal history in concluding that he lacked volitional control. However, "consideration of the nature of

---

[4] The district court also relied on precertification forensic reports authored by Dr. Tanya Cunic, who interviewed Blackledge in 2009. Dr. Cunic noted that research suggested that individuals over age 60 have lower rates of recidivism, but reasoned that Blackledge was not on this trajectory because his last offense occurred at age 59. After analyzing various risk factors, Dr. Cunic concluded that Blackledge was highly likely to continue sexually abusing children.

[an inmate's] prior crimes provides a critical part of the answer" to the volitional control inquiry. *Wooden*, 693 F.3d at 458. According due deference to the district court's assessment of the evidence, we will not second-guess the weight given to Blackledge's criminal history.[5]

Next, Blackledge assigns error to the district court's consideration of a study of elderly sex offenders that was not admitted into evidence. Under Fed. R. Evid. 703, an expert may "testify to opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013). Here, Dr. Zinik referenced the study in his written report, as well as during his testimony at trial, and the court, in its findings, alluded to the study in reviewing Dr. Zinik's conclusions about Blackledge. Contrary to Blackledge's argument, the court did not treat the study as evidence, but rather used it to explain part of the foundation of Dr. Zinik's opinion. Thus, we observe no error in the court's mention of this study.

---

[5] Blackledge also argues that the district court improperly resolved conflicting testimony about whether he suffers from mild schizotypal personality disorder, which, according to Dr. Wood, is associated with traits that indicate a lower risk of recidivism. Dr. North disputed Dr. Wood's diagnosis of schizotypal personality disorder because Blackledge had never received this diagnosis in his numerous prior evaluations, it would be unusual for Blackledge to develop a new personality disorder at his age, and Blackledge did not exhibit the rigid personality associated with schizotypal individuals. Although the court found Dr. North's testimony on this point more credible, the record reflects that Blackledge actually received this same diagnosis from another doctor roughly a year before Dr. Wood's diagnosis. Given that Dr. North provided two other sound bases for his opinion, we conclude that the court did not clearly err in crediting Dr. North's opinion.

6

Finally, Blackledge contends that his civil commitment violates the Ex Post Facto Clause. However, this challenge is foreclosed by our holding in *United States v. Timms*, 664 F.3d 436, 455-56 (4th Cir. 2012).

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*